## CAULDWELL v. BINGHAM & SHELLEY CO.*

### (155 Pac. 190; 163 Pac. 827.)

### ON MOTION TO DISMISS.

**Time—Perfecting Appeal—Statutory Provisions—Sunday.**

1.   Under Section 550, L. O. L., as amended by Laws of 1913, page 617, providing that from the expiration of the 5 days allowed to except to the sureties in the undertaking on appeal, the appeal shall be deemed perfected, an appeal became perfected with the expiration of Monday when the fifth day after the filing of the undertaking fell on Sunday.

**Appeal and Error—Filing of Transcript—Time to File.**

2.   Where an appeal was perfected on October 4th, a transcript filed on October 28th following was filed within 30 days after the appeal was perfected, as prescribed by Section 554, L. O. L., as amended by Laws of 1913, page 618.

**Appeal and Error—Filing of Printed Abstract—Time to File.**

3.   A respondent who formally consented to delay in filing on appeal the printed abstract of record cannot complain of the failure to file the same within the statutory period.

--------

*On constitutionality, application and effect of Federal Employers' Liability Act, see notes in 47 L. R. A. (N. S.) 38; L. R. A. 1915C, 47.
                                                        REPORTER.

ON THE MERITS.

Master and Servant—Personal Injuries—Independent Contractor—
Employers' Liability Act.

4. Under Employers' Liability Act (Laws 1911, pp. 16, 17),
providing that all owners, contractors, subcontractors, or other per-
sons whatsoever engaged in the construction of any building shall
see that all shafts, wells, and floor openings are inclosed, and shall
be liable for failure to comply with this act, etc., one having a con-
tract to do mason work of a barn for total cost, with 10 per cent addi-
tional for superintending, and another having a contract to take im-
mediate charge of carpenter work at a flat rate over cost of labor and
materials, who are both actually engaged in construction of a barn
and responsible for laying of a temporary floor over basement, are
liable for fatal injuries to a servant of the latter who falls through
an unguarded opening in the floor; the test of whether they are ser-
vants or contractors not being in the manner of their receiving com-
pensation.

[As to duty and liability of master with respect to guarding
shafting, see note in Ann. Cas. 1914A, 658.]

Master and Servant—Injuries to Servant—Guarding Openings in
Floor—Employers' Liability Act.

5. Under Employers' Liability Act, providing that all owners, con-
tractors, subcontractors, or other persons whatsoever engaged in the
construction of any building shall see that all shafts, wells and floor
openings are inclosed, and shall be liable for failure to comply with this
act, etc., it cannot be held as a matter of law that a staging on top of
a trestle about five feet above an opening in a temporary floor laid
over basement of a barn under construction is an inclosure within the
meaning of the statute.

Negligence—Violation of Statute—Evidence.

6. The violation of a statute designed for protection of others
constitutes conclusive evidence of negligence or negligence *per se.*

Master and Servant—Superintendent—Employers' Liability Act.

7. Although Employers' Liability Act, Section 2, declares that a
superintendent or person in charge of particular work shall be held
to be the agent of the employer in cases for damages, it does not re-
lieve a superintendent from personal liability for duties enjoined by
Section 3.

Master and Servant—Employers' Liability Act—"Opening."

8. Employers' Liability Act, providing that all shafts, floor open-
ings, etc., shall be inclosed includes an "opening" in a temporary floor
laid over basement of a barn, and that one party engaged in the con-
struction does not desire to have a permanent floor constructed till the
roof is put on, does not give the other a license to neglect to fulfill
the requirements of the statute.

Evidence—Independent Contractor—Building Permit.

9. In an action under Employers' Liability Act against defendant
to recover damages for fatal injuries to a servant working on a barn,

an application for a permit to construct the same in which defendant designated himself as builder is admissible as evidence of his relationship to owner.

From Multnomah: GEORGE R. BAGLEY, Judge.

Action by Isabella Cauldwell against the Bingham & Shelley Company, a corporation, Thomas Muir and Joseph Clossett, in which a judgment was rendered in favor of defendants, and plaintiff appeals. Respondent, Bingham & Shelley Company, files motion to dismiss the appeal. Motion denied.

In Banc.   Statement by MR. JUSTICE HARRIS.

The defendant Bingham & Shelley Company, a private corporation, moves to dismiss the appeal prosecuted by plaintiff. A judgment in favor of defendants was entered on July 29, 1915, and all that followed occurred in the same year. The plaintiff filed and served a notice of appeal on September 23, and on September 28, an undertaking on appeal was served and filed. A proposed bill of exceptions was tendered to and received by the trial judge on September 23. The bill of exceptions was settled and allowed on September 28 and it was filed with the county clerk on October 5. Certified copies of the judgment, notice of appeal and undertaking on appeal, constituting the technical transcript, were filed in this court on October 28, and on the same day the bill of exceptions was filed here. On November 17, pursuant to a written stipulation signed by the attorneys of record, the court extended the time for filing an abstract of record to and including November 29; and the abstract was filed on November 29.

MOTION DENIED.

*Messrs. Sheppard & Brock* and *Messrs. Stapleton & Sleight,* for the motion.

*Mr. P. H. Murdock, Mr. H. E. Hall* and *Mr. Arthur I. Moulton, contra.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. Within five days after the service of the undertaking on appeal the adverse party shall except to the sureties in the undertaking, or be deemed to have waived the right to except. From the expiration of the time allowed to except to the sureties, "the appeal shall be deemed perfected": Section 550, L. O. L., as amended by Chapter 319, Laws of 1913. The fifth day after September 28, when the undertaking was filed, fell on Sunday, October 3, and consequently the appeal became perfected with the expiration of Monday, October 4: *Pringle Falls Power Company* v. *Patterson,* 65 Or. 474 (128 Pac. 820, 132 Pac. 527).

2. Unless the time is extended by an appropriate order of the court the appellant must file the transcript within thirty days after the appeal is perfected: Section 554, L. O. L., as amended by Chapter 320 of Laws of 1913. The statute allows thirty days to file the transcript regardless of whether that period terminates before or after the commencement of a new term of court; and when the transcript was filed on October 28, it was filed within thirty days after the appeal was perfected. The bill of exceptions was filed in time: *West* v. *McDonald,* 74 Or. 421 (144 Pac. 655).

3. The respondents formally consented to the delay in filing the printed abstract of record and cannot now complain. See *St. Martin* v. *Hendershott,* 82 Or. 58 (151 Pac. 706). The motion to dismiss is denied.

MOTION DENIED.

Reversed and remanded March 20, 1917.

## ON THE MERITS.

(163 Pac. 827.)

Department 2.   Statement by MR. JUSTICE BEAN.

This is an action for damages brought under the Employers' Liability Act by Isabella Cauldwell, the widow of Thomas James Cauldwell, deceased, against Bingham & Shelley Company, a corporation, Thomas Muir and Joseph Clossett, for the wrongful death of her husband which occurred by reason of the alleged negligence of the defendants in the construction of a building owned by Joseph Clossett. The latter died soon after he appeared in the case and the action is prosecuted against the other defendants only. At the close of all the evidence the trial court directed a verdict and entered a judgment in favor of the defendants and plaintiff appeals.

The complaint alleges in part as follows: That on April 11, 1914, the defendants were jointly engaged in the construction and erection of a certain building on Twelfth Street North, in the City of Portland, Oregon; that each of them had certain parts of the erection of the structure, but that they all maintained and neglected to cover the floor opening complained of; that on the above date and for some time prior thereto, Thomas J. Cauldwell, deceased, was employed by defendant Muir as a carpenter in the erection of the building which had proceeded to the extent that there had been installed therein a ground floor about eleven feet above the concrete basement floor; that in the joint construction of said building the defendants jointly and severally, carelessly and negligently permitted a certain floor opening about thirty inches wide across

one side of the building to be wholly uncovered and unprotected which caused a great risk to the defendants' employees; that by reason of this Thomas J. Cauldwell, deceased, while working on the floor with a cant-hook which slipped, was caused to step back into the floor opening so maintained uncovered and unprotected, and fell through upon the concrete floor of the basement whereby he suffered such severe injuries that he died about twelve hours thereafter. Bingham & Shelley Company filed an answer to the complaint denying all the allegations and alleging, among other things, that Joseph Clossett was the owner of the property and had adopted plans and specifications for the erection of a building on the lots; that he had supervised its construction, had employed the defendant Bingham & Shelley Company to act as immediate foreman and superintendent, and agreed to pay it the sum of ten per cent of the cost of the building; that this company was merely acting as the agent of Joseph Clossett and was not the owner, contractor, subcontractor, corporation, or person engaged in the construction of the said building as contemplated by the Employers' Liability Act.

Defendant Muir answered alleging in substance that defendant Bingham & Shelley Company was engaged by Joseph Clossett in the erection of the building; that it employed Thomas J. Cauldwell as a carpenter, and Thomas Muir was employed by it merely as a superintendent or foreman of the carpenter work; that he was in no manner responsible for the condition of the work except as such superintendent or foreman. Muir further pleaded assumption of risk, contributing negligence, and the negligence of fellow-servants. The replies put in issue the new matter of the answers.

In addition to the general supervision of the construction of the building and the letting of the contracts for different parts of the work, purchasing materials, etc., the masonry of the stable was the special work of Bingham & Shelley Company. It had worked with Muir in this manner on other structures under contracts entered into in the customary way. Other work on the building, such as painting and plumbing, was let by contracts made by Bingham & Shelley Company for Clossett.

Linklater, Muir's foreman, testified to the effect that some time before the accident he started to lay the permanent floor which was to be of 1x6, tongue and groove, which was then ready for use, but that Bingham said not to do so for the reason above stated; that he intended to cover the hole in the floor as soon as the trestles were taken down but had not had time to do so; and that he did not consider the opening dangerous.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Arthur I. Moulton, Mr. H. E. Hall* and *Mr. P. H. Murdock,* with an oral argument by *Mr. Moulton.*

For respondent, Bingham & Shelley Company, there was a brief over the names of *Messrs. Sheppard & Brock* and *Messrs. Stapleton & Sleight,* with an oral argument by *Mr. C. A. Sheppard.*

For respondent, Thomas Muir, there was a brief and an oral argument by *Mr. Coy Burnett.*

MR. JUSTICE BEAN delivered the opinion of the court.

There is but little controversy in regard to the facts which the evidence tended to show. Mr. Muir

was called as a witness by plaintiff and Mr. Bingham, president of the Bingham & Shelley Company, was a witness on behalf of that defendant.   It appears that Mr. Clossett desiring to have Bingham & Shelley Company construct this building, a large one-story stable, and having confidence in the ability and fairness of that concern did not fix a contract price as it was uncertain how deep it would be necessary to excavate for a concrete basement, and also some old lumber belonging to him was to be used.   He therefore arranged with this company to construct the building, he to pay the total cost and ten per cent additional for its services in superintending the construction and hiring and paying for the labor and materials, etc.   There was no written contract for the work.

On account of the kind of lumber to be used Bingham & Shelley Company agreed that Mr. Muir should take care of the carpenter work for a flat price of $150, over and above the cost of the labor and materials. Linklater was foreman for Muir, and Cauldwell who had worked for the latter at different times as a carpenter was employed and paid by him to assist in that kind of work upon the building.   About a week before the accident complained of Linklater proposed to lay a permanent floor on the ground floor joists which were then in place.   Mr. Bingham, who represented the Bingham & Shelley Company, informed him that this was not desired then as there was no roof on the barn and he wished to go ahead with other work and it was desired to leave room for more light in the basement for a time.   Bingham provided 2x12 planks for a temporary floor which he had laid to within about four feet of the west side wall next to which one plank was put leaving an opening 36x19 inches on the side between the floor timbers over which were placed bricklayers'

trestles four feet nine inches high extending out from the wall seven or eight feet. On these were planks and as the height of the wall progressed other trestles were put on top of the first tier of trestles. This side wall had been constructed at the time of the accident and a short time before the trestles had been removed under the direction of Bingham except near the end of the building. The apertures mentioned were not covered nor inclosed until after the accident. The decedent was at work with a colaborer on the temporary floor about eight feet from the opening and, in attempting to turn a large timber with the cant-hook which gave way, he stumbled backwards and fell through the aperture to the concrete floor below about nine or ten feet causing injuries from which he died soon afterwards.

4. It is contended on behalf of Bingham & Shelley Company that so far as this defendant is concerned there is no allegation in the complaint to bring the action within the Employers' Liability Act in that that pleading showed that the relation of employer and employee did not exist between Bingham & Shelley Company and Thomas J. Cauldwell. It is contended by defendant Thomas Muir that he was employed by the defendant company to superintend the carpenter work and that in pursuance thereto he placed Linklater as foreman and five or six other carpenters at work upon the building; that these men were paid by Bingham & Shelley Company though the money went through Muir, and all he was to receive was $150 for his services; that there was no relationship between Bingham & Shelley Company and Muir that constituted the latter an independent contractor; that under the authority of *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292 (131 Pac. 314, 134 Pac. 1037), Muir cannot

be held liable under the act. The contention is made on behalf of plaintiff that the deceased Cauldwell was in the employ of the defendant Muir who, through his foreman Linklater, had complete control over the details of the work and that it was the duty of Muir to see that the Employers' Liability Act was complied with in relation to the floor upon which Cauldwell was directed by the foreman to work; that the defendant Bingham & Shelley Company was a contractor engaged in the erection of the building and violated the Employers' Liability Act in laying down the floor without enclosing the opening through which Cauldwell fell, in leaving an aperture there for approximately ten days, and in taking away the scaffolding without covering the hole, and that it is liable for injuries resulting therefrom.

The Employers' Liability Act (Laws 1911, pp. 16, et seq.), which has been quoted at length many times, so far as deemed necessary to note, provides that:

"All owners, contractors, subcontractors, corporations or persons whatsoever, engaged in the construction, repairing, alteration, removal or painting of any building, * * shall see that * * all shafts, wells, floor openings and similar places of danger shall be inclosed."

Section 3 is as follows:

"It shall be the duty of owners, contractors, subcontractors, foremen, architects, or other persons having charge of the particular work, to see that the requirements of this act are complied with, and for any failure in this respect" this section provides a penalty.

The evidence adduced upon the trial tended to show that each of these defendants were actively engaged in the construction of the building mentioned, and had immediate charge of and were responsible for the work

of laying the temporary floor in question.   Bingham & Shelley Company, acting by Mr. Bingham, its president, was directly instrumental in supplying the lumber and placing the covering which was to serve as a platform upon which the mechanics were to work in erecting the stable.   Having undertaken this particular work the statute specially enjoins upon this company the duty of conforming that part of the barn to the specifications of the law.   It was its duty when from necessity or for convenience an opening in the temporary floor was left, to inclose the same in order to prevent those employed in and about the place from falling through the aperture whether they were the immediate employees of that company or not; *Morgan* v. *Bross,* 64 Or. 63 (129 Pac. 118.)   The mandate of the Employers' Liability Act is plain and no one questions the power of the lawmakers to enact such provisions.

5. It cannot be held as a matter of law that a staging on the top of trestles about five feet above a floor opening would inclose the same within the meaning of the statute.   The only evidence indicating that the position of Bingham & Shelley Company or Muir in the construction of this building was different from that of the usual building contractor was in the manner of their payment.   How this could affect the mechanics employed in the building operations, who do not appear to have had any knowledge in regard to the matter, we are unable to discover.   The true test of whether one is a mere servant or an employee is not the manner of receiving his compensation, but the question of whether the details of the work and the hiring and discharging of the employees who are to do the work is to be left to such person: *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292 (131 Pac. 314, 134 Pac. 1037);

*Harvey* v. *Corbett,* 77 Or. 51 (150 Pac. 293); *Oregon Fisheries Co.* v. *Elmore Packing Co.,* 69 Or. 340 (138 Pac. 862). It is not essential that we determine whether Bingham & Shelley Company was acting in the capacity of a contractor or that of superintendent of construction as under such circumstances, as the evidence tended to disclose, the law enjoins upon either the duty of conforming to the statutory specifications and inclosing the opening. It may be that the company's duty partook of the nature of both of those designated callings. As to the defendant Muir the evidence tended to show that he had immediate charge of the carpenter work and was the employer of Cauldwell, deceased. It was his statutory duty to protect such opening in the floor of the room where he required his employee to perform his duties.

6. The enactment referred to is for the special protection of employees as well as to govern the liability of employers: *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292, 300 (131 Pac. 314, 134 Pac. 1037). The evidence tends to bring both these defendants within the purview of the statute and to show that both were delinquent as alleged in the complaint. At least twice this court has affirmed judgments against architects, managers or foremen in similar cases where such superintendent had immediate charge of the particular work and failed to comply with the Employers' Liability Act: *Hoag* v. *Wash.-Ore. Corporation,* 75 Or. 588, 604 (144 Pac. 574, 147 Pac. 756); *Harvey* v. *Corbett,* 77 Or. 51, 61 and 62 (150 Pac. 263). The violation of a statute designed for the protection of others constitutes conclusive evidence of negligence or negligence *per se:* 1 Thomp. Neg., §§ 10 and 11; *Peterson* v. *Standard Oil Co.,* 55 Or. 511, 520 (106 Pac. 337, Ann. Cas. 1912A, 625); *Siemers* v. *Eisen,* 54 Cal. 418; *Os-*

*borne* v. *McMasters,* 40 Minn. 103 (41 N. W. 543, 12 Am. St. Rep. 698).

7. We are not called upon to say whether Clossett was delinquent or not. Suffice it to say that Section 2 of the act declares that the superintendent or person in charge or control of the particular work shall be held to be the agent of the employer in cases for damages. It does not relieve such superintendent from personal liability for neglect of duty enjoined by Section 3 and other parts of the law.

8. It is claimed by defendant Muir that as his foreman desired to lay the permanent floor prior to the injury this absolved him from liability on account of a defect in the temporary one. It does not necessarily follow that because one erecting a building does not desire to have the permanent floor constructed when there is no roof on the structure that a license is given any one to neglect to fulfill the requirements of the law in arranging the temporary covering. The statute decrees that all shafts, wells, floor openings and other similar places of danger where workmen are engaged in the construction of a building shall be inclosed. This refers to an opening in a temporary floor as well as in a permanent one. It does not appear that either the Bingham & Shelley Company or Muir lacked authority or were prevented by any one of higher authority from guarding the aperture in question. As the evidence tends to show they simply neglected to do so and in this were delinquent. Whether these facts narrated were true or not was a question for the consideration of the jury. We are of opinion that the cause should have been submitted to that body and that the lower court erred in granting the motion for a directed verdict in favor of defendants.

9. Plaintiff called as a witness A. L. Lolspeich who identified an application for a permit to construct the building in question made by Bingham in which he designated his company under its former name as the builder and Mr. Joseph Clossett as the owner. Upon objection by defendants' counsel the document was excluded as incompetent, plaintiff's counsel saving an exception. The application was a written declaration regarding the connection of Bingham & Shelly Company with the construction of the building in question and we think for that purpose was competent. We do not deem it necessary to consider other assigned errors as we have observed none which would be likely to recur. It follows that the judgment of the lower court will be reversed and the cause remanded for a new trial.    REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE MCCAMANT concur.