## MALLATT v. OSTRANDER RY. & TIMBER CO.

### No. 1028.

District Court, D. Oregon.

Aug. 17, 1942.

Green & Landye, of Portland, Or., for plaintiff.

Malarkey, Sabin, Herbring & Jones and Randall S. Jones, all of Portland, Or., for defendant.

YANKWICH, District Judge.

The action is brought by Alma Mallatt, the widow of Clarence Ellsworth Mallatt, for damages, for injuries resulting in his death, while in the employ of the defendant as a loader on October 10, 1941, at the company's reloading ground at Molalla, Oregon. The complaint charges negligence, in the violation of provisions of the Oregon Logging Safety Code, and, especially, violation of the provisions of Section 102-1601 of the Oregon Employers' Liability Act, O.C.L.A. Sec. 102-1601.

By motion, the defendant has moved to strike the portion of the complaint which charges these negligent acts. At the pre-trial hearing, it propounded certain legal questions in conjunction with the motion to strike. These questions are a challenge to the constitutionality of the Logging Safety Code, promulgated by the State Industrial Accident Commission of the State of Oregon, and,—what has become known in the decisions of the State of Oregon and among practitioners, generally, as,—the "and generally" clause of the section referred to. This clause reads: " * * * and generally, all owners, contractors or sub-contractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection of the safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

In addition to the Employers' Liability Act, Oregon has a state Workmen's Compensation Act, Section 102-1701 et seq., O.C.L.A. In it certain occupations are listed as hazardous. Every employer in a hazardous industry comes under this act, unless he elects not to do so. If he makes this election, his liability for injuries to his employees is gauged by the provisions of the Employers' Liability Act, Sec. 102-1601, O.C.L.A.

The defendant admits that the industry in which the deceased was engaged involved risk or danger within this act.

The attack on the Logging Code is grounded solely upon its alleged violation of the Constitution of the State of Oregon, and, more particularly, of Section 21, Article I., which delimits legislative authority. The "and generally" clause is challenged both on the ground that it is violative of Section 20 of Article I. (the equal rights clause), Section 1 of Article III. (the distribution of powers provision) and Section 10 of Article IV. (the legislative department section) of the Constitution of Oregon, and Section 1 of the 14th amendment to the Constitution of the United States (the equal protection and due process clauses).

■ The case comes here because of diversity of citizenship only. And the relationship of the parties, and the duties between the defendant and the deceased are to be gauged by local law. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

■ Under the more recent decisions of the Supreme Court, we are not confined, in determining what the local law is, to the decisions of the highest court of a state. Decisions of intermediate courts may as effectively be the source of our conception of local law. See Six Companies v. Joint Highway District, 1940, 311 U.S. 180, 61 S. Ct. 186, 85 L.Ed. 114; West v. American T. & T. Co., 1940, 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956; MacGregor v. State Mutual Life Assurance Co., 1942, 315 U.S 280, 62 S.Ct. 607, 86 L.Ed. —.

Our attention has been called to the fact that Circuit Courts of the State of Oregon have rejected, on several occasions, the challenge of constitutionality under the Oregon Constitution in the very form in which it is made here. The Circuit Courts of Oregon are courts of general jurisdiction, established by virtue of constitutional authority. Oregon Constitution, Article VII., Sec. 1; Oregon Constitution, Article VII., Sec. 9; Crocker v. Russell, 1930, 133 Or. 213, 221, 287 P. 224. While the state is divided into judicial districts and the circuit judges are elected therein, the courts are state courts, with state-wide jurisdiction. The salaries of the judges are paid by the state. Sec. 93-248, O.C.L.A.; see Shattuck v. Kincaid, 1897, 31 Or. 379, 49 P. 758. They may sit everywhere in the state on disqualification of a local judge or on assignment by the Chief Justice, which they cannot refuse to accept. Sec. 93-245, O.C.L.A.

■ The most recent decision overruling a constitutional attack on the Logging Safety Code was made by the Circuit Court of the State of Oregon for Multnomah County on March 27, 1942 in a case instituted by the same plaintiff against an Oregon corporation which the plaintiff then thought had been in charge of the operation in which the deceased met his death. Under the circumstances, we accept the rulings of the state courts interpreting their own law and their own Constitution as not only determinative of these questions, but as binding upon us.

■■ We thus limit our inquiry to the Federal question raised as to the portion of the Oregon Employers' Liability Act which has already been reproduced. The challenge comes rather late. The statute has been on the books since 1911. Under the circumstances, we have not only the presumption of validity which attaches to any legislative act, but also the enhanced presumption which comes from the absence of any questioning over a long period of years. Life & Casualty Ins. Co. v. McCray, 1934, 291 U.S. 566, 572, 54 S.Ct. 482, 78 L. Ed. 987. The long acquiescence of the community has another beneficial result. Ordinarily, when a statute comes before a court soon after its enactment and before any authoritative decisions have interpreted its language or delimited its scope, many arguments may be indulged in about its meaning. But when an enactment has been on the statute books for a period of thirty years and its meaning has been repeatedly expounded by the highest court of the state, speculation as to hidden, unknown or possible dangers which may lurk behind its language are futile. For the ready answer is that the law must be judged in the light of the interpretations placed upon it by the highest court of the state. Hence, here, in disposing of the contention that this particular clause is vague and lays down no definite standard of care or duty, we seek guidance not so much in the language of the statute, as in the meaning which the Supreme Court of Oregon has given to it. Of course, a vague or uncertain statute does not meet the requirement of due process. Lanzetta v. New Jersey, 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888.

■ The object of the statute has been declared to be the substitution, in hazardous employments, of a higher degree of care than the ordinary degree of care obtaining,

generally, in the relation of master and servant. As said by Mr. Justice Coshow in Seldon Coomer v. Supple Investment Co., 1929, 128 Or. 224, 274 P. 302, 303: "The law requires an employer to exercise every reasonable care and precaution requisite to protect its employees and others having a duty or a legal right to be on the premises of the employer from injury."

And see Camenzind v. Freeland Furniture Co., 1918, 89 Or. 158, 175, 174 P. 139; Fromme v. Lang & Co., 1929, 131 Or. 501, 281 P. 120; Ludwig v. Zidell, 1941, 167 Or. 488, 498, 118 P.2d 1073; Pacific States Lumber Co. v. Bargar, 9 Cir., 1926, 10 F.2d 335; Union Oil Co. of California v. Hunt, 9 Cir., 1940, 111 F.2d 269, 275.

Mr. Justice Rand in Fromme v. Lang & Co., supra, stated very aptly the question which arises under the "and generally" clause (131 Or. 504, 281 P. 122): "Was there a device, not used by defendant, which it was practicable to use for the protection of defendant's employees and which if used would not have limited the efficiency of defendant's elevator, and if used would have protected the decedent from the injuries which caused his death?"

This statement is quoted with approval, as expressing, with clarity, the duty under the statute in Ludwig v. Zidell, supra, 167 Or. at page 498, 118 P.2d 1073, one of the latest cases on the subject, decided on November 18, 1941.

The issues framed in an action under this act thus turn upon a question of fact, i. e., whether the defendant has used every device, care and precaution practicable in the particular industry. Judging from the number of decisions on the subject which have reached the Supreme Court of Oregon, for thirty years, litigants, their attorneys and trial judges, seem to have had no difficulty in framing this issue, in its diverse forms, dependent on the varying conditions of employment.

■ As stated in one of the cases, the law does not penalize an employer for want of genius in anticipating the latest inventions. Camenzind v. Freeland Furniture Co., supra, 89 Or. 175, 174 P. 139.

■ No right to recover flows from mere employment in a dangerous occupation. Negligence, or the failure to use proper means or devices practicable under the circumstances, must be shown by the injured employee. Ferretti v. Southern Pacific Co., 1936, 154 Or. 97, 103, 57 P.2d 1280.

■ Can it be said that a law which leaves to a jury the determination of such questions turns them into legislators or amounts to a denial of due process? Constantly, through our law, jurors have been made judges of facts upon the determination of which liability or nonliability depended. As stated by Mr. Justice Black in United States v. Ragen, 1942, 314 U.S. 513, 523, 62 S.Ct. 374, 378, 86 L.Ed. 383: "The mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct."

In an earlier case, Nash v. United States, 1913, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232, Mr. Justice Holmes wrote: "The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death."

And statutes which have left the determination of the reasonableness or practicability of an action to a jury are not only invulnerable from a constitutional standpoint, but are in the very spirit of the jury system. Thus a Nebraska statute which made it the duty of innkeepers in case of fire to do certain specific things "and to do all in their power to save such guests and inmates" was held within the constitutional norm of due process. Miller v. Strahl, 1915, 239 U.S. 426, 434, 36 S.Ct. 147, 149, 60 L.Ed. 364. The language used there by Mr. Justice McKenna is very apposite to the contention here: "Rules of conduct must necessarily be expressed in general terms and depend for their application upon circumstances, and circumstances vary. It may be true, as counsel says, that 'men are differently constituted,' some being 'abject cowards, and few only are real heroes;' that the brains of some people work 'rapidly and normally in the face of danger while other people lose all control over their actions.' It is manifest that rules could not be prescribed to meet these varying qualities. Yet all must be brought to judgment. And what better test could be devised than the doing of "all in one's power' as determined by the circumstances?"

Tests of this character are not metaphysical, subjective or abstract. They are practical, objective and concrete. The standard they establish is as certain as it is pragmatic. They allow a jury to determine whether, in the light of past conduct, a person's actions meet the standard of reasonableness, practicability or the like. Standards of this type have been upheld constantly. Lloyd v. Dollison, 1904, 194 U.S. 445, 450, 24 S.Ct. 703, 48 L.Ed. 1062; Waters-Pierce Oil Co. v. Texas, (No. 1), 1909, 212 U.S. 86, 108-111, 29 S.Ct. 220, 53 L.Ed. 417; Omaechevarria v. Idaho, 1918, 246 U.S. 343, 348, 38 S.Ct. 323, 62 L.Ed. 763; Hygrade Provision Co. v. Sherman, 1924, 266 U.S. 497, 501-503, 45 S.Ct. 141, 69 L.Ed. 402; United States v. Alford, 1927, 274 U.S. 264, 267, 47 S.Ct. 597, 71 L.Ed. 1040; United States v. Wurzbach, 1930, 280 U.S. 396, 399, 50 S.Ct. 167, 74 L.Ed. 508; United States v. Shreveport Grain & Elev. Co., 1932, 287 U.S. 77, 81, 82, 53 S.Ct. 42, 77 L.Ed. 175; United States v. Ragen, 1942, 314 U.S. 513, 522, 523, 62 S.Ct. 374, 86 L.Ed. 383; Minnesota v. Probate Court, 1940, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744, 126 A.L.R. 530; Gorin v. United States, 1941, 312 U.S. 19, 27, 61 S.Ct. 429, 85 L.Ed. 488; United States v. Henderson, 1941, 73 App.D.C. 369, 121 F.2d 75; Gorin v. United States 9 Cir., 1940, 111 F.2d 712, 720; see my opinion in People v. Curtiss, 1931, 116 Cal.App.Supp. 771, 300 P. 801, 804.

 In all these cases, the tests were, as here, general, and called for the assaying of conduct by juries as a basis for civil or criminal liability. But the Supreme Court could see no departure from accepted constitutional practice in any of them. We see none in the challenged statute. The test laid down is specific enough to satisfy the requirement of due process. We add that dangerous employments have long been recognized in law as a proper category for special classification, calling for different treatment. See State v. Bunting, 1914, 71 Or. 259, 273, 274, 139 P. 731, L.R.A. 1917C, 1162, Ann.Cas.1916C, 1003; Bunting v. Oregon, 1917, 243 U.S. 426, 37 S.Ct. 435, 61 L.Ed. 830, Ann.Cas.1918A, 1043; Holden v. Hardy, 1898, 169 U.S. 366, 18 S.Ct. 383, 42 L.Ed. 780; Ex parte Martin, 1910, 157 Cal. 51, 106 P. 235, 26 L.R.A.,N.S., 242.

It follows that the motion to strike should be denied.

So ordered.