Argued November 13, affirmed December 16, 1959

# FISHER *v.* KIRK & SON, INC.

347 P. 2d 851

*Philip A. Levin,* Portland, argued the cause for

appellant. With him on the briefs were Peterson, Pozzi & Lent, Portland.

*Winfrid K. Liepe,* Portland, argued the cause for respondents. With him on the briefs were Maguire, Shields, Morrison & Bailey and Howard K. Beebe, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN and KING, Justices.

KING, J., (Pro Tempore)

This is an action for damages for personal injuries. Plaintiff claims both under the Employers' Liability Act and under common-law negligence.

After the plaintiff had completed his case, the lower court granted defendant's motion for nonsuit and plaintiff appealed.

There is just one assignment of error, namely: The court erred in sustaining defendant's motion for nonsuit.

The plaintiff, Edward D. Fisher, was a 44-year-old truck driver regularly employed as such by Consolidated Freightways. He had been working for the same employer for approximately 10 years prior to the date of the accident on October 11, 1954.

The defendant, Morris P. Kirk & Son, Inc., was a Nevada corporation, with smelter and warehouse in Portland, Oregon. In connection with its warehouse it has a loading platform which abuts upon the railroad track, from which the defendant both receives and makes freight shipments. The loading platform parallels the southerly side of the railroad track and is 68 feet 2 inches in length and 17 feet 11 inches in width. The surface of the loading platform or dock is of asphaltic concrete and is about 3 feet 4 inches

above ground level. The loading and unloading from railroad cars is done along the northerly side of the dock, principally near the east end.

The defendant's warehouse building extends along the easterly end of the dock from near the northeast corner thereof, southerly for a considerable distance south of the southeast corner of the dock.

On the west another of defendant's buildings extends from the south up to the dock and the northeast corner of that building is 3 feet east of the southwest corner of the dock. On the south side of the dock there is a ramp 10 feet wide extending from the south side of the dock near the east end thereof and along the west side of the main warehouse building. Approximately 7 feet west of where that ramp connects with the dock is a light pole, set very close to the dock. This leaves a space of about 47 feet 4 inches along the south side of the dock in which trucks can back up to it and load or unload cargo and freight.

On October 11, 1954, there was no railing around the dock and no bumpers around the edges, except a 6 x 6, 18 feet long, from a point about 14 feet west of the northeast corner, along the north side, where railroad cars were unloaded and, of course, the building across the east end.

For over five years the plaintiff, as driver for and employee of Consolidated Freightways, had quite regularly called at defendant's warehouse and loading platform to pick up freight, consisting usually of steel or metal, often in the form of little bars weighing about 40 pounds each. At one time his trips to defendant's premises were as often as once a day, and at the time of the accident they were about once a week.

On the 11th of October, 1954, the plaintiff was driving his employer's truck and set of doubles, or the trailer which connects onto the tractor or truck and another trailer which connects onto the rear of the first one. He disconnected his rear trailer near the entrance to the defendant's property and proceeded to back the front box or trailer up to the south side of the dock.

A hyster, 3 feet in width and 7 feet long, with the lifts drawn in or not extended, was in the front box or trailer. The hyster was brought along for the purpose of loading the freight and was part of the equipment to be furnished by Consolidated Freightways.

As the bed of the trailer was considerably higher than the top of the dock, it was necessary to have a steel plate or ramp from the trailer bed to the dock. The plaintiff went in the warehouse and asked the defendant's bookkeeper to bring out the defendant's hyster to lift the steel ramp for him. This the bookkeeper did as an accommodation and left immediately after raising the ramp and while the plaintiff and his helper were fastening it up and connecting on another short piece of steel.

The plaintiff then proceeded to back the hyster out of the trailer. His helper was engaged in other activities about the truck and did not see the backing out of the hyster. The hyster was in reverse gear and idling, and plaintiff's foot was on the brake as he came down the ramp. The maximum speed the hyster could make in reverse was about five miles per hour. As he reached the bottom of the ramp the hyster was turned so that it backed toward the west end of the dock. As he turned, the plaintiff accelerated the machine and looked to the left or east, but not

to the right or west until he was near the west edge of the dock. He then put his brake on hard and slid right off the dock. It had been raining and the dock was wet with some pools of water standing on it.

The hyster teetered on the edge of the dock and then tipped over and pinned the plaintiff's leg under the edge of it, causing bruising, severe breaks and eventually three different amputations. The injuries were severe and permanent and resulted in the final amputation of plaintiff's left leg a few inches above the knee.

As mentioned before, the defendant moved for a nonsuit at the close of plaintiff's case in chief. The motion was quite long and will not be set out here verbatim. Suffice it to say that among other things the defendant contended there was not sufficient evidence to go to the jury under either the theory of violation of the Employers' Liability Act or under the theory of common-law negligence.

■ In determining this question it will be well to consider it in two phases: (1) Was there sufficient evidence to go to the jury under the theory of a violation of the Employers' Liability Act; and (2) was there sufficient evidence to go to the jury on the theory of common-law negligence? In approaching the general question raised by motion for nonsuit in two phases, it is not to be considered as a departure from the firmly-established rule in this state that the Employers' Liability Act does not create a new cause of action, but only the standard of care to be exercised. *Shelton v. Paris,* 199 Or 365, 261 P2d 856; *Coomer v. Supple Investment Co.,* 128 Or 224, 274 P 302; *Mallatt v. Ostrander Ry. and Timber Co.,* 46 F Supp 250.

In the present case the plaintiff, Edward D. Fisher, was not an employee of the defendant Morris P. Kirk & Son, Inc., but was actually an employee of Consolidated Freightways. There was no actual contractual relationship in the nature of employment between the plaintiff and the defendant. If the Employers' Liability Act applies in this case between the plaintiff and the defendant, it must be under the theory of a third-party employer, and under what is called the "and generally" section of the statute, which provides as follows:

"654.305. Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

This court has many times applied the facts of various cases to the above statute. In a very recent instance, on April 8, 1959, in *Byers et al v. Hardy et al.,* 216 Or 42, 337 P2d 806, Mr. Justice SLOAN said:

"The Employers' Liability Act makes no provision for a so-called third party action similar to that found in the Workmen's Compensation Act. It is only the reference of risk and danger to 'the public' (ORS 654.305) which permits such an action to be brought at all. This court has consistently held that it is not every member of the public that is thus protected. It is only those whose employment or duties require them to be about machinery of an employer other than his own or whose duties may require such person to expose himself in or about hazardous conditions or structures of such

other employer which are prohibited or circumscribed by the Act. It must be a hazard or risk which the employer has created or permits to exist and which is within the control of the employer sought to be held. There must likewise be a commingling of function or duty of the injured person and the employes of the employer. In other words, the acts or omission of the employer which give rise to a cause of action in behalf of an injured member of the public requires active and direct participation on the part of the employer. Turnidge v. Thompson, 89 Or 637, 175 P 281; Rorvik v. North Pac. Lumber Co., 99 Or 58, 190 P 331, 195 P 163; Drefs v. Holman Transfer Co., 130 Or 452, 280 P 505; Myers v. Staub, 201 Or 663, 272 P2d 203."

In the present case there was no participation in the work or activity of the plaintiff by the defendant in any manner. The plaintiff's employer was a common carrier who, over a period of years, frequently came to defendant's warehouse and loading platform to get shipments of freight. The defendant furnished no part of the trucks or equipment used in the loading or transporting of that freight. The defendant or its employees merely pointed out to the employees of Consolidated Freightways, including the plaintiff, what freight they wished to ship and prepared the invoices or shipping receipts. Consolidated Freightways was even required to bring its own hyster for loading, which they did in this case.

It is true that defendant's bookkeeper or office employee, at plaintiff's request and as an accommodation to him, took defendant's hyster and raised and placed the steel ramp for the plaintiff; but he left with the hyster immediately after this was done. It was in no sense connected with the accident and apparently plaintiff does not urge it as such.

Other than this, neither the defendant nor its agents,

nor any of its employees mingled with, assisted, or supervised in any way the actions of plaintiff and his fellow employee in the spotting of the truck, the unloading of the hyster, or any other operation connected with the loading or leading up to the unfortunate accident. The defendant in no way controlled the plaintiff's actions. Defendant did not direct or even know that the plaintiff was backing the hyster out of the truck instead of driving it forward. The plaintiff and his employer were in complete control.

■ None of the decisions of this court has extended the scope of the Employers' Liability Act far enough to cover the situation presented under the facts of this case. We do not believe that it rightfully could be or should be so extended, unless the legislature sees fit to change the Act. The facts as presented in this case do not bring it within the scope of the Employers' Liability Act, and the circuit court correctly ruled in that regard. *Byers et al. v. Hardy et al.,* supra; *Warner v. Synnes et al.,* 114 Or 451, 462; 230 P 362, 235 P 305; *McCauley v. Steamship "Willamette" et al.,* 109 Or 131, 145, 215 P 892; *Tamm v. Sauset,* 67 Or 292, 297, 135 P 868; *Lawton v. Morgan, Fliedner & Boyce,* 66 Or 292, 131 P 314, 134 P 1037.

It remains to be determined whether the plaintiff has offered any proof of common-law negligence under the allegations of his complaint to submit the case to the jury on that theory.

■ In determining this question, of course, as in determining the applicability of the Employers' Liability Act, the evidence must be viewed in a light most favorable to the plaintiff, and the plaintiff is given the benefit of every reasonable inference from the facts. *Hicklin v. Anders,* 201 Or 128, 253 P2d 897, 269 P2d 521.

■ Defendant's common-law duty to the plaintiff would be to provide or maintain a reasonably safe place. It is the same duty that the defendant would owe to an invitee. *Lange v. St. Johns Lumber Co.*, 115 Or 337, 343, 237 P 696; *Hicks v. Peninsula Lumber Co.*, 109 Or 305, 220 P 133.

■ The first allegation of negligence in plaintiff's complaint is the failure to provide bumper guards at the end of said dock.

■ This so-called "dock" was not truly a "dock" in the rightful use of the word. It was not a slip extending between two piers for the reception of ships or vessels. It was merely a raised loading platform, which was only 3 feet 4 inches above the natural ground level and was designed for convenient and easy loading and unloading of trucks and railroad cars.

There was no proof offered of any hole, break or other defect in the structure itself. There was nothing to show that it was improperly constructed, other than the mere fact that bumpers, barricade railing or fence had not been placed entirely around it. Its entire surface and perimeter were in plain view. The accident occurred in board daylight, soon after the noon hour. The plaintiff himself testified that he knew and was entirely familiar with the fact that there were no bumpers around the entire loading platform. He himself had used the platform for the same purposes, daily or weekly, over more than the last five years without mishap of any kind to himself or others.

■ The mere fact alone that an accident happened was not sufficient of itself to show that bumpers would have prevented it, or that lack of bumpers across the west end of the platform was negligence or lack of reasonable care on the part of the defendant.

Plaintiff's second allegation of negligence is: In

removing from the end of said dock piled lumber which was being used as a bumper guard immediately prior to said accident.

■ The plaintiff's own testimony shows that there were various piles and pieces of lumber on the platform that consisted of materials taken from and used in the freight cars and called "dunnage." It was constantly being used or being added to as the occasion would demand. There was no evidence to show that the defendant knew or should have known that the plaintiff used one of the piles of boards to back his hyster against. Certainly there would be no general duty on the defendant to specifically notify the plaintiff each and every time they moved any loose lumber or dunnage on the platform. If any material was moved, it was not a structural change in any sense, and was perfectly open and obvious to the plaintiff, had he even glanced in that direction. There was nothing regarding the construction of the dock or changes in location of materials thereon that placed any duty on the defendant to warn the plaintiff, under the facts of this case. There was no duty on the defendant to warn plaintiff of something he already knew or by the exercise of reasonable care should have known.

The plaintiff also alleges negligence in failing to maintain the loading dock's surface in a skidproof manner under all weather conditions.

There is nothing to show that the loading dock was in any different condition from any other wet asphalt surface used in driveways or highways. The testimony merely shows a sliding when the brakes were applied hard to the hyster. The distance of the slide is not shown, but at most it could have been only a very few feet. It was not shown that this was un-

usual on a quick and hard application of the brakes. No defect of any kind was shown in the construction or maintenance of the loading dock that could be classed as negligence on the part of the defendant in that regard.

A careful review of all the evidence in this case convinces us that the trial court properly sustained the defendant's motion for a nonsuit.

Affirmed.