Argued January 12, affirmed March 22, petition for rehearing
denied April 18, 1961

# BROWNING *v.* TERMINAL ICE & COLD STORAGE COMPANY

360 P. 2d 630

*Glenn R. Jack,* Oregon City, and *Roger Rook,* Milwaukie, argued the cause for appellant. On the briefs were Erlandson & Rook, Milwaukie, and Jack, Goodwin & Santos, Oregon City.

*Wayne Williamson,* Portland, argued the cause for respondent. On the brief were Mautz, Souther, Spaulding, Kinsey & Williamson and Roland F. Banks, Jr., Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, O'CONNELL and LUSK, Justices.

PERRY, J.

The plaintiff was injured by a fall while installing insulation in a building being constructed for the defendant, and brought this action to recover damages for his injuries on the theory that under the Employ-

ers' Liability Law the defendant owed to the plaintiff certain duties which were breached.

The jury returned a verdict for the plaintiff, and, upon defendant's motion, the trial court set aside the verdict, entering a verdict for the defendant. From this order of the trial court the plaintiff appeals.

The plaintiff charged in his complaint that the defendant was negligent in failing to provide on the roof and beneath the roof of the building proper walkways, platforms and scaffolding on which he could work in installing a hardboard type of insulation.

The facts as to the employment and cause of plaintiff's injury are outlined by the plaintiff as follows:

"The plaintiff was injured on April 11, 1958, when he fell 31½ feet through the roof of a building then under construction onto the concrete below. He was a carpenter employed by Fiberglas (a company which sold and installed insulation) as an insulation installer.

"The building on which he was working was a 200 x 280 foot concrete slab cold storage warehouse with the top of the roof 31½ feet above the floor. On the roof there were 2″ x 14″ joists, 24 inches on center. Several crews were working on the construction of the roof. First was a crew of truss-fab men placing the joists; then came a crew installing bridging; then the group in which the plaintiff was working which was installing 2 x 4 sheets of rigid fiberglas insulation between the joists; then another group from the fiberglas crew came along installing two layers of about 5 inch insulation on top of the rigid insulation. The insulation was about the same color as the plywood. Then came a crew of carpenters laying 4 x 8 plywood sheets over the top of the joists and finally a crew of roofers applying the roofing.

"The plaintiff was one of three men who usually constituted the crew laying the rigid insulation.

The 2 x 4 sheets were placed between the joists and came to rest on the inside edges on small wooden strips that had been nailed to the inner lower sides of the joists. These men carried knives to trim the pieces to fit when necessary.

"When plaintiff was several joists out from the plywood area, where there was solid footing, he slipped and fell through to the cement below."

The plaintiff admits that at the time he was injured he was in the employment of the Fiberglas Engineering and Supply Division of the Owens-Corning Fiberglas Corporation (hereinafter referred to as Fiberglas Corporation), and that this corporation was engaged by the defendant as an independent contractor to install the insulation.

The charges of negligence set forth in plaintiff's complaint would be applicable if made against his employer, but, since this is an action by the plaintiff against a party not his employer, his right of recovery must rest upon some duty owed by the defendant as a third person to the plaintiff within the terms of the Employers' Liability Law. That portion of the law (ORS 654.305) which has been construed as placing duties upon a third person who is not an employer of an injured workman reads as follows:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

As stated by this court on many occasions, the particular words of the act which create duties toward another's employees are directed to persons "having charge of or responsible for any work involving risk or danger."

■ "Having charge of or responsible for any work involving risk or danger," involves more than an economic interest in the completion of a project in conjunction with the employer of the injured workman. *Fisher v. Rudie Wilhelm Whse. Co.*, 224 Or 26, 355 P2d 242; *Johnson v. Timber Structures, Inc.*, 203 Or 670, 281 P2d 723; *Warner v. Synnes et al.*, 114 Or 451, 230 P 362, 235 P 305, 44 ALR 904; *Harvey v. Corbett*, 77 Or 51, 150 P 263.

A defendant, sought to be charged under the act with duties toward an employee of another, must be a person who has the right to "control of the physical instrumentalities immediately in use and which are the media of the injuries or death giving rise to a claim of damage under the law." *Myers v. Staub*, 201 Or 663, 676, 272 P2d 203.

The plaintiff attempts to bring himself within the above announced rule by reason of his contention that one Wilbur A. Sisson, who it is admitted had general supervision of the construction of the building, was an employee of the defendant and not a contractor who was responsible to the defendant only for the result of the enterprise. The relationship of these parties is set forth in an agreement evidenced by a letter from the defendant to Sisson:

"Dear Mr. Sisson:

"This is to confirm our mutual understanding of the general terms and conditions under which you are to construct a refrigerated storage warehouse for us on our property located in the Kel-

logg Park industrial area in the City of Milwaukie, Oregon.

"The building is to be constructed in accordance with the plans and specifications as drawn and compiled by Mr. William Reuter, Civil Engineer, 426 Medical Arts Bldg., Seattle, Washington, subject to whatever additions, changes or modifications as may, from time to time during the course of construction, be determined as necessary or advisable for the betterment of the completed structure. All such changes or modifications must first have our approval.

"It is understood that we will mutually agree on the acceptance of the various bids offered for all sub-contracts.

"This job is to be accomplished by you on the basis of cost plus thirty-five dollars ($35.00) per day while you are on the job and a stipulated fee of $15,000.00, the latter to be paid upon completion and acceptance.

"All purchases of materials and commitments for rentals and services made by you for this job shall be made in your name as contractor. The invoices covering such materials, rentals and services are to be paid by you, taking advantage of all discounts within due dates. You are also to take care of all payrolls, payroll taxes, etc., and make the necessary government reports in connection therewith.

"For the purpose of making payments as outlined above, we will open an account in your name as contractor at The Bank of California, N. A. Portland, Oregon. As payroll payments and or other disbursements are made, you are to forward supporting papers to our Portland office for audit and to enable us to replenish your account so that sufficient funds will be available for your current use.

"Inasmuch as we are to advance funds for the payment of various invoices for materials, equipment rentals, services, payrolls, etc., it is under-

stood that the title to the building as it progresses shall remain solely in our name.

"It is further understood that there will be installations of mechanical equipment by other contractors during the course of construction and before completion of the building and that fullest cooperation will be extended in order that all phases of the project will progress orderly to the completion of the whole. Time is of the essence, the completion date being set for not later than May 1, 1958 and it is mutually agreed that all concerned will work to that end.

"If the above covers the salient points of understanding and meets with your approval, kindly sign one copy at the space provided below and return to us.

Yours very truly,

TERMINAL ICE & COLD STORAGE COMPANY

By Lowell E. Kern
Executive Vice-President and General Manager

Accepted

By: Wilbur A. Sisson
Wilbur A. Sisson, Contractor"

■ However, whether the above agreement is construed as creating the legal relationship between the defendant and Sisson of principal and agent or owner and independent contractor, either interpretation is immaterial to this case. It is admitted by plaintiff that Fiberglas Corporation was hired by defendant as an independent contractor to install the insulation in the building under construction. Under these facts then the non-delegable duties of the statute placed upon an employer toward his own employees, as alleged in plaintiff's complaint, rested upon the shoulders of Fiberglas Corporation. *Drefs v. Holman Transfer Co.*

*et al.,* 130 Or 452, 280 P 505; *Warner v. Synnes et al., supra.*

■ Independent contractors, owners and other persons interested in construction work on the same building where there is a commingling of employees do not owe to the employees of another exactly the same duties they owe to their own employees under the Employers' Liability Law. Their liability to the employees of another rests on the duty to safeguard and use their structures and equipment under their control so as not to create or maintain a hazardous situation which may be the proximate cause of an injury. *Fisher v. Kirk & Sons, Inc.,* 219 Or 402, 347 P2d 851; *Byers et al. v. Hardy et al.,* 216 Or 42, 337 P2d 806; *Myers v. Staub,* 201 Or 663, 272 P2d 203; *Cauldwell v. Bingham & Shelley Co.,* 84 Or 257, 155 P 190, 163 P 827.

■ There is not a single shred of evidence that the defendant or Sisson were interested in the means employed by the Fiberglas Corporation in installing the fiberboard, nor is there a shred of evidence that the structure upon which the plaintiff was working was in any way defective so as to create a hazard prohibited by the act.

The judgment of the trial court is affirmed.

O'CONNELL, J., specially concurring.

I concur in the result reached by the majority. I add this note simply to make our position clear on a point which the majority opinion leaves ambiguous. The majority opinion states: "A defendant, sought to be charged under the act with duties toward an employee of another, must be a person who has the right to 'control of the physical instrumentalities immediately in use and which are the media of the injuries or

death giving rise to a claim of damage under the law.' *Myers v. Staub*, 201 Or 663, 676, 272 P2d 203."

This could be taken to mean that a person sought to be charged under the Employers' Liability Law must be one who has the right to direct the physical activity which is the medium of the injury. *Thomas v. Foglio*, 225 Or 540, 358 P2d 1066 (1961) makes it clear that a third party defendant may be liable under the Employers' Liability Law where his participation in the work causing the injury consists only in bringing to the work project a dangerous instrumentality which exposes the plaintiff workman to danger. The part of the majority opinion quoted above might be construed to express the view stated by Mr. Justice PERRY in the dissent in *Thomas v. Foglio*, supra. Ambiguity such as this spawns unnecessary litigation and appeal. My comments are intended only to avoid this ambiguity.