DINGELL,
*Appellant,*

*v.*

DOWNING-GILBERT, INC. et al,
*Defendants,*

INTERMOUNTAIN WHOLESALE COMPANY,
*Respondent.*

(A8303-01752; CA A35656)

726 P2d 937

Stephen V. Piucci, Portland, argued the cause for appellant. With him on the brief was Lawrence Wobbrock, Portland.

David Bartz, Portland, argued the cause for respondent. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff's employer, American Weatherization Company, was engaged as a subcontractor to install insulation in a house that was being built by a general contractor. On February 9, 1982, pursuant to the general contractor's order, defendant Intermountain Wholesale Company delivered a supply of sheetrock wallboard to the jobsite. Intermountain had no responsibility to install the wallboard or to do anything else at the site after completing the delivery. Plaintiff was injured later in the day when the wallboard fell on his foot while he was attempting to insulate the window against which the wallboard had been propped by Intermountain's employes.[1] Plaintiff brought this action, contending that Intermountain is liable to him under the Employer's Liability Act, ORS 654.305 to 654.335 (ELA).[2] The trial court granted Intermountain's motion for summary judgment, holding that Intermountain has no duty to plaintiff for which the ELA provides redress.[3] Plaintiff appeals, and we affirm.

Intermountain relies principally on *Miller v. Georgia-Pacific Corp.*, 294 Or 750, 662 P2d 718 (1983), where the court said:

"This court has repeatedly construed the ELA 'to apply to employees of a person other than the defendant, if their work requires them to come within the risk of injury from the defendant's instrumentalities.' * * *

"Before the ELA can be made the basis of a claim for relief by an injured worker suing a defendant other than an employer of the worker, however, the defendant must be in charge of or have responsibility for work involving risk or

---

[1] It appears that the fall of the wallboard may have been precipitated by plaintiff's attempt to move it out of the way. It also appears that Intermountain's delivery of wallboard to the site was not necessarily restricted to one occasion. Neither fact is relevant to our disposition.

[2] ORS 654.305 provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

[3] The court entered a final judgment pursuant to ORCP 67B.

danger in either (a) a situation where defendant and plaintiff's employer are simultaneously engaged in carrying out work on a common enterprise, or (b) a situation in which the defendant retains a right to control or actually exercises control as to the manner or method in which the risk-producing activity is performed. * * *" 294 Or at 754.

Intermountain argues:

"The EL[A] does not create a duty on the part of a material supplier to another's employee who is injured while working at the other's direction when the supplier exercised no control over the work site or over the manner or method of the employee's work. The EL[A] applies only to 'employers' who have control over the manner or method of work causing the injury. Intermountain delivered material to the work site and left. Intermountain did not have any control whatsoever over the installation of insulation or the movement of the wallboard after its delivery. * * *"

■    Plaintiff relies principally on *Thomas v. Foglio,* 225 Or 540, 358 P2d 1066 (1961), and on the special concurrence in *Browning v. Terminal Ice Co.,* 227 Or 36, 360 P2d 630 (1961), where the author of *Thomas* summarized it as having made

"* * * clear that a third party defendant may be liable under the Employers' Liability Law where his participation in the work causing the injury consists only in bringing to the work project a dangerous instrumentality which exposes the plaintiff workman to danger. * * *" 227 Or at 44.

Plaintiff contends:

"* * * A direct analogy can be made to the instant case: Defendant Intermountain's interest in complying with its duties under the Employer's Liability Law extended beyond merely furnishing materials to the jobsite. Clearly, a duty by defendant Intermountain was owed to Stephen Dingell and other employees of American Weatherization; that of delivering and storing wallboard to the jobsite in a safe manner and in a manner which would not create a hazardous situation."[4]

---

[4] Plaintiff also argues that, independently of Intermountain's participation in the events resulting in injury, the ELA applies because his employer and Intermountain were participants in a common enterprise. We disagree. The court stated in *Thomas v. Foglio, supra,* 225 Or at 547, that, for a common enterprise within the contemplation of the ELA and of ORS 656.154 to exist, there must be an "intermingling of duties and responsibility" between the participants and "this participation must be more than a common interest in an economic benefit which might accrue from the accomplishment of the task."

In *Thomas v. Foglio, supra,* the plaintiff worker was injured because of the unsafe condition of a truck on which he was loading logs. The defendant was the owner of the truck and was not the plaintiff's actual employer. The plaintiff was the employe of Elk Creek Logging Company, and it was undisputed that the defendant had and exercised no control over the work *activity* which led to the injury, although his driver remained on the scene. The threshold question was whether, by bringing the unsafe truck onto the worksite, the defendant could be deemed to be the plaintiff's indirect employer for purposes of the ELA.

The court's answer is somewhat perplexing. It first stated:

> "* * * To draw the defendant into the employer-employee relationship in this sense, it must be shown that the defendant was one 'having charge of, or responsible for the work.' ORS 654.305.

> "It would seem clear that one who merely sells equipment which is intended for use and is used by workmen and who, after the sale, is not involved in the use to which the equipment is put, is not an employer under the Act. * * * At this point we simply wish to note that one who merely supplies equipment which is to be used in the course of plaintiff's employment is not an employer under the Employers' Liability Law. This is also true where the equipment is leased rather than sold. The Act cannot apply unless in some sense the defendant has 'charge of' or is 'responsible for' the work out of which the injury arose. * * *" 225 Or at 545-46.

The court then reasoned:

> "The narrower question presented to us in the case at bar (assuming that defendant was not a lessor of the trucks[)] is whether an employer can be regarded as 'having charge of' work where the component part of the general undertaking for which he is responsible does not involve any risk-creating *activity* on the part of his employee but does call for the use of equipment over which he has control and which, if not maintained with proper safeguards, necessarily exposes the employees of the other employer to an unreasonable risk in the course of carrying on the common enterprise. In a narrow sense, it could be said that in such a case the defendant employer does not have charge of work but has charge only of equipment. But the word 'work' in ORS 654.305 means more than the actual physical movement of the employees hired to

perform a job; it means the entire enterprise with all of the component parts necessary to the completion of the enterprise in which both employers have joined to accomplish. Thus in the instant case the defendant had 'charge of' and was 'responsible for' that part of the job or 'work' which consisted of furnishing safe equipment to be used in a loading operation. And defendant's interest in the loading operation extended beyond the mere furnishing of adequate equipment; he was, as we shall develop more fully later, liable for all overloading fines, and consequently the manner in which the truck was loaded could affect him quite substantially.

"What we have said here does not mean that a manufacturer, vendor, or a similar supplier, including a lessor of equipment is within the Act. The defendant must participate in the activity out of which the injury arose. * * *" 225 Or at 549-50. (Emphasis in original.)

It is unclear whether the activity-instrumentality analysis in *Thomas* survives later Supreme Court decisions. *See Miller v. Georgia-Pacific Corp., supra; Wilson v. P.G.E. Company,* 252 Or 385, 448 P2d 562 (1968). We are also uncertain where the court intended to draw the line between mere vendors or suppliers, who are not subject to the ELA, and providers of equipment, who remain responsible under the statute for the safety of equipment. It would make little sense for the provider's presence or continued presence at the scene to be the point of distinction, because that distinction has no necessary correlation with either the condition of the instrumentality or the control over its condition, as opposed to control over its use.

Those questions about the *Thomas* opinion do not have to be answered here, because *Thomas* has been distinguished by the Supreme Court in a manner which suffices to resolve the immediate controversy. *In Parks v. Edward Hines Lbr. Co. et al,* 231 Or 334, 372 P2d 978 (1962), the plaintiff was employed by Hines and was injured while moving a piece of steel with a lift truck. For purposes of that activity, he was under Hines' sole control. He was struck by a railroad car operated by Southern Pacific Company, which was apparently on the Hines premises to deliver equipment which was related to Hines' business in general but not to the plaintiff's work activity in particular. The court stated:

"In *Thomas v. Foglio,* 225 Or 540, 358 P2d 1066 (1961), a

divided court held that a jury could find that a person not employing workmen was subject to the Employers' Liability Act if he had charge of, or was responsible for, equipment in the use of which the workmen of another employer were so intimately concerned as to be subjected to risk. The case involved an employment of the defendant's defective equipment in the plaintiff's work. Nothing in that decision requires us to hold that the railroad, in merely delivering cars to a shipper, assumes the statutory burdens of an employer with respect to all the workmen of the shipper.[2] The record before us reveals no relationship between the plaintiff and any railroad workmen, nor between the plaintiff and the railroad cars as equipment brought to his work. * * *

---

[2] "A specially concurring opinion in Browning v. Terminal Ice Co., 227 Or 36, 43, 44, 360 P2d 630, summarizes *Thomas v. Foglio* as holding that 'a third party defendant may be liable [under ORS 654.305] where his participation in the work causing the injury consists only in bringing to the work project a dangerous instrumentality which exposes the plaintiff workman to danger * * *.' The dangerous equipment in *Thomas v. Foglio* was related to the work in which the workman was engaged when he suffered the injury. There is no policy expressed in ORS 654.305 to justify extending the rule of *Thomas v. Foglio* to equipment in general which may come upon the *situs* of work through the instrumentality of some stranger to the work being done." 231 Or at 339. (Emphasis in original.)

■  Although the line was not sharply defined in either *Thomas* or *Parks,* we think that this case falls on the *Parks* side of the line.[5] Neither the wallboard nor Intermountain bore a cognizably closer relationship to plaintiff or to plaintiff's work activity here than the train and its operators bore to the plaintiff and the work activity in *Parks*. It may well be that, under the facts alleged, Intermountain's handling of the wallboard was the cause of plaintiff's injury. However, the dispositive question is one of statutory duty, not one of causation. As the court said in *Parks:*

"* * * Any case the plaintiff may have against the railroad is * * * a common-law negligence case. The fact that the collision occurred on private property instead of upon a public

---

[5] In other contexts, the Supreme Court has admonished against a decisional approach that turns on "case matching." *See, e.g., Miller v. Grants Pass Irrigation,* 297 Or 312, 318, n 4, 686 P2d 324 (1984). That admonition is difficult to follow in the ELA "indirect employer" context, where the principles the Supreme Court have developed have sometimes not survived beyond the cases in which they were first articulated, but have sometimes been resurrected for sporadic application. The discussion and the authority cited in the text are illustrative.

highway does not bring the action under ORS 654.305 to 654.335." 231 Or at 339.

Affirmed.