Argued and submitted November 23, 1981, reversed and
remanded for new trials April 5, 1982

STRUTZ,
*Appellant,*

*v.*

COLUMBIA ORTHOPEDIC COMPANY,
*Respondent,*

STRUTZ,
*Appellant,*

*v.*

COLUMBIA ORTHOPEDIC COMPANY,
*Respondent.*

(No. A7908-04004, No. A7903 01094, CA A20367)
(Cases Consolidated)

643 P2d 352

Elden M. Rosenthal, Portland, argued the cause for appellants. With him on the brief was Rosenthal & Greene, P.C., Portland.

Jerry B. Hart, Portland, argued the cause for respondents. With him on the brief were Joseph J. McCarthy, and Fellows, McCarthy, Zikes & Kayser, P.C. Portland.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Roberts, Judge, Pro Tempore.

JOSEPH, C. J.

## JOSEPH, C. J.

In this negligence case, after a judgment for the defendant, plaintiff appeals the granting of a defense motion to strike her allegations with respect to defendant's failure to fit a brace to her leg after repairing it.[1] We reverse and remand for a new trial.

Plaintiff is a 60-year-old woman who contracted polio in 1951 and must walk with the aid of crutches and a long leg brace. She has worn a brace with a hinged knee mechanism for approximately 25 years. The mechanism is designed to lock when her leg is straightened to provide support for walking and to unlock to allow her knee to bend for sitting. At the foot end of the brace is a special shoe which is attached by calipers to metal bars which extend to the knee-joint mechanism. Above the knee-joint mechanism is a leather cuff which fits on the thigh and is closed by laces.

The locking of the knee-joint mechanism is controlled by a metal bail behind the knee. In order to sit down, the wearer manually pulls up on the bail to release the lock. When the leg is fully extended, the brace is designed to lock automatically. However, plaintiff testified that when she stood up, she would also manipulate the bail by hand to make sure that she could hear the characteristic snap, indicating that it had locked.

Defendant is in the business of constructing and repairing artificial limbs and orthopedic devices. Harold Enneberg is its principal operator and is certified in orthotics, including brace manufacture and repair. The brace in question was constructed by defendant in 1970 and has been worn continually by plaintiff since that time. Defendant last fitted her in person in 1975.

On September 7, 1977, plaintiff's husband brought the brace to defendant for replacement of the leather thigh cuff and, in plaintiff's words, to "check the brace over and lock mechanism to see it was in good shape." Enneberg replaced the cuff, and the following morning plaintiff's

---

[1] Plaintiff's husband also sued for loss of consortium. Both claims were combined for trial, and the appeals are consolidated. Throughout the opinion, we refer only to the wife's claim. The result applies to both.

husband picked it up and brought it home. Plaintiff immediately put on the brace, but when she began walking, the lock gave way and she fell. That afternoon, her husband returned the brace to defendant to have the lock fixed, because plaintiff said it "wasn't working properly." Enneberg checked the locking mechanism that day and satisfied himself that the bail was not faulty. However, he discovered "a little motion" in the lock and welded "a little material on the points of the lock." Later that day, plaintiff's husband picked up the brace and brought it home. Plaintiff testified that after she put the brace on:

"* * * I locked it two or three times before I got up. I pulled it out and locked it to be sure that it was locked.

"I got up with my crutches, walked over to the sink. This time I wasn't very confident of the lock, so I hung onto the sink before I put all my weight on it to try it, and the lock gave way [causing another fall]."

She said that she then telephoned Enneberg, who told her she was not properly locking the brace. She decided not to wear the brace for a few days, because her knee was swollen from the fall. When she again put it on, she "unlocked and locked it three or four times to be sure that it was snapping." She walked from her bedroom to the kitchen without putting all of her weight on the brace. She testified:

"Well, I was beginning to feel pretty good about it. I thought well, if it held me this far, probably it's — maybe I'm wrong. Maybe Mr. Enneberg is right. Maybe it is that I wasn't locking it. So I put the crutches again next to the refrigerator. I thought this time I'm going to be careful. * * * As I put all my weight on this leg, the brace lock gave way. I fell down — I sat down on my leg, and that time I broke it."

Plaintiff was hospitalized with a broken leg. She sought $250,000 in general damages. In her complaint, she alleged:

"Defendant was negligent in one or more of the following particulars:

"1. In failing to reasonably inspect said brace on September 7 or September 8, 1977;

"2. In failing to determine that the locking mechanism of said brace was worn and loose;

"3. In failing to discover that the safety bail was broken;

"4. In failing to warn plaintiff of the dangerousness of her brace;

"5. In advising plaintiff that there was 'nothing wrong' with her brace;

"6. In failing to physically fit plaintiff with said brace on September 8, 1977, before releasing said brace to her husband for [plaintiff's] use;

"7. In failing to physically fit said brace to plaintiff when said brace was returned to defendant on September 8, 1977, for additional inspection and repair prior to releasing said brace to plaintiff's husband for plaintiff's personal use;

"8. In advising plaintiff that said brace had no defects after she had telephoned defendant on September 8, 1977, without first personally inspecting said brace while worn by plaintiff."

At trial, several explanations were given for the lock's failure. One of plaintiff's experts testified that it was caused by wear on the lock mechanism. Another testified that the locking pins were at the wrong angles. Still another testified that, because of the long-term development of a small crack in the bail, it suddenly broke under a substantial load. Defendant's experts testified that the lock was functioning properly. Enneberg and another defense expert said that the leg must be fully extended to engage the lock properly.

At the close of the evidence, defendant moved to strike allegations 6, 7 and 8. In questioning plaintiff's counsel, the trial judge stated:

"I have difficulty in following how, assuming that there was a standard of care that would require him to have the brace wearer in his office at the time he changed the leather cuff, how that failure to have the brace wearer there contributed to the accident."

He said that there was no evidence that "an inspection of her wearing the brace would have disclosed something."

■ An allegation of negligence which is not supported by some evidence must be withdrawn from the jury. *Martin Engineering v. Opton,* 277 Or 291, 560 P2d 617 (1977); *Armstrong v. Stegen,* 251 Or 340, 445 P2d 509 (1968). When

there is no evidence that the negligence is causally connected to plaintiff's harm, the allegation must also be stricken. *Krening v. Flanders,* 225 Or 388, 358 P2d 574 (1964). However, if there is credible evidence supporting the allegation and causally connecting the alleged negligence to the injury, it would be error to strike that allegation. *See Whaley v. Russell Stover,* 44 Or App 541, 545, 606 P2d 667 (1980).

██   Defendant concedes in its brief that there was evidence that Enneberg should have inspected the brace while plaintiff was wearing it but argues that there was no evidence that this negligence caused plaintiff's injury. We conclude that there was.

The record discloses the following testimony of one of plaintiff's expert witnesses, a certified prosthetist-orthotist (CPO):

"Q: If a patient straightens her leg and the brace is not automatically locked, what does that indicate to you?

"A: Either the patient can't extend the leg fully to lock the brace or the locks are loosing *[sic]* up here to where it just snaps back out under load.

"Q: Is that something that a CPO would be able to determine by looking at the brace on the patient?

"A: Yes, on the patient.

"Q: Is that something that a CPO can determine by simply manipulating the brace without the patient in it?

"A: It's kind of hard to duplicate the forces applied by a patient, because each patient is an individual and they walk a little bit different. And you have to put it on and watch it."

He also said that the integrity of the brace could not be properly tested without having the patient in the brace.

Another expert testified for plaintiff that the stresses applied in shop-testing a brace were very different than the stresses when it is being used. An expert for defendant testified that, if he had received a complaint from a patient that a lock had failed and it had been several years since he had seen the patient, he would want to see the patient "to see if the appliance is still fitting correctly."

Plaintiff testified that she had gained 18 to 22 pounds since she was last personally fitted with the brace

by defendant in 1975. There was evidence that she was a careful and methodical user of her brace and had not had a lock failure during 25 years of brace-wearing.

The primary thrust of plaintiff's case was that something was wrong with the brace that she did not understand and, had Enneberg observed the brace on plaintiff's leg, he should have been able to determine the source of the problem. There was evidence to support this theory.

■ Defendant argues that it was proper to strike allegations 6, 7 and 8 because they merely repeat, in detail, what is alleged generally in the first five allegations. *See Laurie v. The Patton Home,* 267 Or 221, 516 P2d 76 (1973); *Mayor v. Dowsett,* 240 Or 196, 400 P2d 234 (1965). We do not agree. A failure to inspect *the brace* is not equivalent to, nor does it encompass, a failure to inspect *the brace while worn by the patient.* The latter inspection would involve the relationship of the brace to the leg; the former does not.

■ Finally, defendant argues that plaintiff must show that the alleged error was prejudicial. However, error in wrongly taking an issue from the jury is presumed prejudicial, unless the record clearly shows otherwise. *Elam v. Soares,* 282 Or 93, 102, 577 P2d 1336 (1978). Defendant contends that, because no evidence was stricken by the trial court in granting defendant's motion and because the jury was instructed on the definition of negligence and the duty owed by an orthotist to his patient, plaintiff was not prejudiced by the trial court's alleged error. However, the trial court stated that it would not permit plaintiff to argue, in closing, that "any negligence lies in the failure to have her come in" under the final pleadings. To hold that plaintiff was not prejudiced would be equivalent to holding that closing arguments would have had no effect on the jury's deliberations. We refuse to hold that.[2]

Reversed and remanded for new trials.

---

[2] Defendant relies on *Stamm v. Wood,* 86 Or 174, 168 Pac 69 (1917). In that case, the court held that defendant was not prejudiced by the striking of his defense of estoppel when the evidence admitted nonetheless supported an estoppel. There, however, defendant did not properly plead estoppel. Moreover, given the trial court's limitation upon plaintiff's closing argument in this case, it cannot be said that plaintiff nevertheless "had the full benefit of" her theory.