Argued and submitted May 26, 1982, affirmed April 13, reconsideration denied
May 27, petition for review denied July 19, 1983 (295 Or 446)

# ARNEY,
*Respondent,*

*v.*

# BAIRD,
*Defendant,*

# SUMMIT HOUSE, LTD. et al,
*Appellants.*

(A7903-01271; CA A22324)

661 P2d

Michael A. Lehner, Portland, argued the cause for appellants. With him on the briefs were Wm. H. Mitchell, and Mitchell, Lang & Smith, Portland.

W. Eugene Hallman, Pendleton, argued the cause for respondent. With him on the brief were Mautz and Hallman, Pendleton, and Pippin & Bocci, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In this negligence action, plaintiff seeks damages for injuries she sustained when an automobile driven by defendant Baird struck her and collided with a tow truck operated by defendant Thorsnes, an employe of defendant Summit House, Ltd. Defendants Thorsnes and Summit House appeal from a judgment for plaintiff,[1] contending that the allegations of negligence against them should not have gone to the jury. We affirm.

At 2:30 p.m. on November 10, 1978, while driving south from Timberline Lodge on Highway 173, plaintiff hit a patch of ice, lost control of her automobile and drove off the road. In response to her request for help, Summit House, a gas station offering towing services, sent Thorsnes. When he arrived, he positioned his truck for the tow, the back toward the automobile and the front extending onto the roadway. Plaintiff and Thorsnes placed four or five flourescent orange traffic cones in a line running from the front of the truck up the highway a distance of two or three car lengths. The road was 27-feet wide (between the snow banks on each side); however, with the truck in place, there was a space of about 15 feet available for traffic to pass between it and the west edge of the road.

As plaintiff watched the operation from the driver's side of the truck, Thorsnes instructed her to move one of the cones so that he would not hit it. Just after picking up the cone, and while standing east of the line of cones and between the front of the truck and oncoming traffic, plaintiff was struck by Baird's automobile.

The highway was designated one way for southbound traffic and, after a curve, ran straight for approximately 750 feet to the point of impact. Baird testified that, as he rounded the turn, driving at 25 miles per hour, he saw the tow truck and thought there was enough room to drive around it. Because there were cars parked along the road on the right, he drove "pretty much in the middle of the road," but more toward the left. Halfway down the hill, Baird

---

[1] The jury returned a verdict assessing the relative fault of the parties as follows: Baird, 80 percent; Thorsnes and Summit House, 10 percent and plaintiff, 10 percent.

saw plaintiff and knew that he "had to slow down or stop or do something." He was then on ice, and when he attempted to brake and steer away, his automobile slid out of control, hitting plaintiff. Baird stated that he "was not aware of any ice" and denied having seen any other "icy patches" on the road earlier. He had encountered "snow up above on the corners" but "had plenty of traction" and "everything was just fine until [he] came down the straight-away." Officer Schwartz, who investigated the accident, described the road conditions as "packed snow and ice." Baird testified further that he did not see cones or signs "at that corner" and did not remember seeing any traffic cones in front of the truck. According to Thorsnes, in addition to setting out the traffic cones, he had placed a "Caution - Wreck Ahead" sign 125 feet up the highway from the truck. Plaintiff testified that he had not done that.

Plaintiff's complaint alleged that Thorsnes and Summit House were negligent in the following particulars:

"1. By instructing plaintiff to enter the roadway when he knew or should have known of the dangerous situation;

"2. By failing to properly secure the accident scene to prevent traffic from using the roadway where plaintiff was standing; and

"3. By failing to adequately warn oncoming traffic of the icy conditions and the dangerous situation."

Defendants contend that the court erred in denying their motions to strike the specifications and their motion for a directed verdict. Their arguments with respect to each of the allegations are essentially the same: no duty was owed; if a duty was owed, there was no breach; if there was a breach, it did not cause the injuries.

■ ■ Whether defendants owed a duty to plaintiff under the facts alleged is a question of law for the court. *See Yanzick v. Tawney,* 44 Or App 59, 62, 605 P2d 297, *rev den* 288 Or 667 (1980). Generally, one owes a duty to act with reasonable care to avoid injury to a person in any situation in which it can be reasonably anticipated that a failure to do so would likely result in such injury. *See Kirby v. Sonville,* 286 Or 339, 344-45, 594 P2d 818 (1979); *Allen v. Shiroma/Leathers,* 266 Or 567, 514 P2d 545 (1973). Further-more, although neither Thorsnes nor Summit House was

under an obligation to assist plaintiff, once they undertook to do so, they assumed the duty of performing that task with reasonable care. *See Laubach v. Industrial Indemnity Co.,* 286 Or 217, 221, 593 P2d 1146 (1979); *McDonald v. Title Insurance Co. of Oregon,* 49 Or App 1055, 1059-60, 621 P2d 654 (1980); Restatement (Second) of Torts § 323 (1965).[2] Defendants assumed control of the scene and involved plaintiff in the towing of her car. Under these circumstances, defendants had a duty to conduct all aspects of the towing operation with due care to avoid foreseeable injury to plaintiff's person as well as to her automobile.

■    Ordinarily, questions of negligence and causation are for the jury, and if there is credible evidence supporting an allegation and causally connecting the alleged negligence to a plaintiff's injury, it would be error to strike that allegation. *Strutz v. Columbia Orthopedic,* 56 Or App 612, 616-17, 643 P2d 352 (1982).

(1)    *The direction to plaintiff to move the cone.*

■    Thorsnes' direction was part of the towing operation. In deciding if the conduct was negligent, the jury had to determine if it created a recognizable danger, *i.e.,* a risk sufficiently great that a reasonable person would have anticipated the likelihood of the kind of harm suffered. *See Itami v. Burch,* 59 Or App 400, 404, 650 P2d 1092 (1982). The issue should have been withdrawn from the jury only if defendants' conduct clearly falls either above or below the community's standard of resonable care. *See Stewart v. Jefferson Plywood Co.,* 255 Or 603, 607, 469 P2d 783 (1970). From the evidence, the jury could find: Thorsnes was aware or should have been aware that a short time before Baird's automobile hit plaintiff, she had lost control of her

---

[2] Restatement (Second) of Torts § 323 (1965), provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's *person or things,* is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking."

automobile along the same stretch of road, probably because of ice, and had driven it through the same area in which Thorsnes had stationed his truck. Moreover, Thorsnes' truck blocked one-half of the roadway and the cars parked along the side required traffic to maneuver to pass through. The traffic cones, placed as they were some 30 to 40 feet up the road from the truck, were inadequate to direct traffic safely around the tow truck. Plaintiff followed Thorsnes' directions in the initial placement of the cones. To comply with the later instruction to move one of them, she had to leave a position of relative safety behind the truck and walk between the truck and oncoming traffic.

■ On those facts, which the jury could find, we cannot say as a matter of law that the harm that plaintiff suffered was not reasonably foreseeable and that, given that risk, Thorsnes acted with reasonable prudence in instructing her to move the cone. Also, the jury could find from these facts that the conduct alleged was a substantial factor in causing plaintiff to be injured. The trial did not err in submitting the allegation to the jury.

(2) *Failure to secure the scene properly.*

■ Defendants had a duty to conduct the towing operation with reasonable care. The operation included the placement of the traffic cones undertaken by Thorsnes. In addition, we note that the trial court, without objection by defendants, instructed the jury on the requirements of ORS 487.595:

> "* * * [T]he statutory law of Oregon provides that an operator of a wrecker or tow vehicle engaged in the salvaging of another vehicle may stop the wrecker or tow car where it obstructs traffic proceeding along the roadway when the operator (A) determines that the salvage operation requires stopping the wrecker in the roadway, and (B) places warning signs or signals *at a suitable distance upon the roadway,* and (C) activates the amber or red light of a revolving type on the wrecker or tow truck." (Emphasis supplied.)

Officer Schwartz stated that, although he would not have *blocked* the road, it would have been "prudent" to place traffic cones farther up the road from the truck to

direct traffic to the side of the road away from the scene. He also stated that it would be "more prudent" to do so if it was known that the part of the road "directly preceding the accident scene * * * was icier and slicker * * * than any of the road preceding." Jack Benson, an operator of a towing company with experience driving trucks in "every kind of weather" testified that, given the conditions at the scene, he would have put pylons, flares and a "Wreck Ahead" sign at the curve above the scene "to get [traffic] to move to the right." From this testimony and the findings previously discussed, the jury could conclude that Thorsnes was negligent in failing to place cones or other devices farther up the road than he did in order to divert traffic to the right side of the road and around the truck and plaintiff.

There was also evidence from which the jury could find that Thorsnes' negligence in this regard was a substantial factor in causing plaintiff's injuries. Baird saw no cones or pylons anywhere on the road above the tow truck. He drove down the middle of the road somewhat toward the left-hand side (*i.e.*, the side blocked by the truck), thinking there was room to pass, and did not brake until he was halfway from the curve to the truck. At that point, he saw plaintiff and, while driving on ice, attempted to steer away and lost control of his automobile. From these facts and those discussed above, the jury could infer that, if a series of traffic cones or flares had been placed to direct oncoming traffic toward the right side of the road, Baird would have approached at a reduced speed and followed a straighter path to the open portion of the road in front of the truck, eliminating the need to brake and steer in such a way as to lose control of his automobile. It was not error to submit the allegation to the jury.

(3) *Failure to warn.*

Defendants challenge this allegation on the ground that they were under no duty to warn of ice or other naturally-occurring, obvious road conditions.[3] The cases

---

[3] Thorsnes and Summit House also argue that (1) the allegation permitted the jury to find them negligent solely because of the failure to warn of the icy conditions; (2) there was no evidence that defendants had the signs or other devices enabling them to give such a warning; and (3) the allegation, in effect, repeats the second allegation. We disagree. As plaintiff points out, the allegation

and other authority cited by defendants in support of that argument involve plaintiffs who themselves encountered ice or some other dangerous condition, allegedly unknown to them, and were injured as a result.[4] In this case, however, the question is *not* what duty defendants owed *Baird or other drivers* approaching the scene, but rather what duty they owed to *plaintiff.* The jury, on these facts, could find that the failure to warn did constitute a breach of the duty owed *to plaintiff* to conduct the towing operation with due care.

Whether the ice Baird encountered was "obvious" or was a generally-existing condition was a question of fact. However, even if Baird should have anticipated the icy patch, that fact would not have foreclosed the jury from concluding that defendants were negligent as alleged. Restatement (Second) of Torts § 302A (1965) (cited with approval in *Yanzick v. Tawney, supra,* 44 Or App at 66) provides, in pertinent part:

> "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third party.
>
> "Comment:
>
> "* * * * *
>
> "c. * * * [T]he actor is *required* to know that there is a certain amount of negligence in the world, and that some human beings will fail on occasion to behave as a reasonable ‧man would behave. Where the possibility of such negligence involves an unreasonable risk of harm, either

---

on its face states that the negligence resulted from defendants' failure to warn of *both* conditions, which *together* created a danger to plaintiff unless such warning were given. In any event, under these circumstances an allegation of failure to warn of the ice alone would have been proper. There was evidence that Thorsnes could have given the warning. In addition to the traffic cones, he had flares and a "Wreck Ahead" sign. A "Danger-Ice" sign would not be the only method of providing the warning. Finally, the second and third allegations are different in substance. Although the goal of the asserted prudent conduct in each case is the same, *i.e.,* to prevent traffic from hitting plaintiff, the methods each allegation suggests for achieving that result are different. On this record, the jury could have found that both, either or neither was required.

[4] *See, e.g., Shum v. Venell,* 273 Or 143, 539 P2d 1085 (1975); *Anthis v. Bordeaux,* 271 Or 73, 530 P2d 836 (1975); *Fitzwater v. Sunset Empire, Inc.,* 263 Or 276, 502 P2d 214 (1972); *Archer v. Rogers Construction,* 252 Or 165, 447 P2d 380 (1968); Restatement (Second) of Torts § 349 (1965).

to the person who is to be negligent *or to another,* the actor, as a reasonable man, in *required* to take it into account and to govern his conduct accordingly."[5] (Emphasis supplied.)

As stated above, the jury could find that Thorsnes knew or should have known that plaintiff had lost control of her automobile because of the ice on the road and had driven through the space in which he had parked the truck. The jury could conclude that the position of the tow truck increased the risk of another driver's doing the same thing, a risk not significantly diminished by the four or five traffic cones in front of the truck.

■ Given these circumstances and those previously noted, a reasonable jury could conclude that the failure to warn approaching drivers of the dangerous situation caused by the truck's blocking the road *and* the ice on the road immediately before it created such a likelihood of serious injury to plaintiff that reasonable care required that such a warning be given and that the failure to do so was negligent. Furthermore, for reasons similar to those stated in our discussion of the second allegation, we cannot say that, as a matter of law, Thorsnes' failure to give the warnings as alleged was not a cause of plaintiff's injuries. The court did not err in submitting the allegation to the jury.

Because it was not error to submit the three specifications to the jury, it was proper to deny defendants' motions to strike and motion for directed verdict.

Affirmed.

---

[5] Restatement (Second) of Torts § 302A (1965), Illustration 3 states:

"A, constructing a building, blocks the sidewalk, and forces pedestrians to walk in the street, where there is heavy traffic and no protection. A could easily avoid the risk by constructing, at slight expense, a passage with a guardrail, but fails to do so. B, a pedestrian forced into the street, is struck and injured by an automobile driver who is not keeping a proper lookout. A may be found to be negligent toward B."