Argued and submitted February 27, reversed and remanded with instructions
July 12, 1989

STEINER,
*Respondent,*

*v.*

BEAVER STATE SCAFFOLDING
EQUIPMENT CO.,
*Appellant,*

*v.*

BOUWMAN TUBULAR SCAFFOLD
COMPANY, INC.,
*Third-Party Defendant.*

(A8603-01295; CA A48107)

777 P2d 965

Don G. Carter, Portland, argued the cause for appellant. With him on the briefs were Janice M. Stewart, Karen D. Randolph and McEwen, Gisvold, Rankin & Stewart, Portland.

Robert K. Udziela, Portland, argued the cause for respondent. On the brief were Raymond J. Conboy, Jeffrey S. Mutnick and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Before Graber, Presiding Judge, and Joseph, Chief Judge, and Edmonds, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiff's employer, E.J. Bartells Co., was hired to insulate and weatherize a large tank. Bartells contracted with Beaver State Scaffolding Equipment Co. (defendant) to erect a scaffold at the job site. Defendant installed the scaffold before the insulation work began and had no further involvement with the project until after Bartells had completed its work, when defendant's personnel returned to the site to dismantle the scaffold. Plaintiff was injured when he fell from the scaffold while performing the insulation work for Bartells. He brought this action against defendant, alleging negligence and a violation of the Employer's Liability Act (ELA). ORS 654.305 *et seq.* The jury found for plaintiff on both claims but found him contributorily negligent and fixed his comparative fault at 49 percent on the negligence claim and 35 percent on the ELA claim. Therefore, the judgment reflected plaintiff's choice to have the damage award calculated in accordance with the verdict on the ELA claim. Defendant appeals from the resulting judgment.[1]

Defendant first contends that it was not on the job site while plaintiff was working and that it had no involvement in his job activity and no control over the scaffold when he was using it. Therefore, according to defendant, it cannot be liable under ELA and the trial court erred by denying defendant's motion for a directed verdict on ELA claim.[2] The general issue raised by defendant's argument is when and whether ELA applies to a person, other than the injured worker's actual employer, who brings the injury-causing goods or equipment to the workplace. The specific question is whether a maker or supplier of unsafe equipment can be liable under ELA if it has no involvement with the work or control of the equipment or its use after installing and delivering it.

---

[1] We will state additional facts in our discussion of the issues to which they are relevant.

Defendant brought a third party action against Bouwman Tubular Scaffold Company, Inc., from which it had purchased the scaffolding. Defendant obtained a judgment against Bouwman that is not involved in this appeal.

[2] Defendant also argues, for the same reasons, that the court erred by denying its motion for partial summary judgment. Because the rulings on the two motions turn on the same issues, we need not discuss the denial of the summary judgment separately or decide whether it is reviewable. *See Payless Drug Stores v. Brown,* 300 Or 243, 708 P2d 1143 (1985); *Stromme v. Nasburg and Co.,* 80 Or App 26, 721 P2d 847, *rev den* 302 Or 35 (1986).

The leading Oregon case is *Thomas v. Foglio,* 225 Or 540, 358 P2d 1066 (1961). The plaintiff was injured while loading logs for his actual employer on a truck that the defendant owned and had brought onto the employer's premises. The court held that the defendant could be the plaintiff's "indirect employer" and liable to him under ELA. It first explained:

> "It would seem clear that one who merely sells equipment which is intended for use and is used by workmen and who, after the sale, is not involved in the use to which the equipment is put, is not an employer under [ELA]. * * * At this point we simply wish to note that one who merely supplies equipment which is to be used in the course of plaintiff's employment is not an employer under the Employers' Liability Law [*sic*]. This is also true where the equipment is leased rather than sold. [ELA] cannot apply unless in some sense the defendant has 'charge of' or is 'responsible for' the work out of which the injury arose." 225 Or at 545.

The court then said, however:

> "The narrower question presented to us in the case at bar (assuming that defendant was not a lessor of the trucks[)] is whether an employer can be regarded as 'having charge of' work where the component part of the general undertaking for which he is responsible does not involve any risk-creating *activity* on the part of his employee but does call for the use of equipment over which he has control and which, if not maintained with proper safeguards, necessarily exposes the employees of the other employer to an unreasonable risk in the course of carrying on the common enterprise. In a narrow sense, it could be said that in such a case the defendant employer does not have charge of work but has charge only of equipment. But the word 'work' in ORS 654.305 means more than the actual physical movement of the employees hired to perform a job; it means the entire enterprise with all of the component parts necessary to the completion of the enterprise in which both employers have joined to accomplish. Thus in the instant case the defendant had 'charge of' and was 'responsible for' that part of the job or 'work' which consisted of furnishing safe equipment to be used in a loading operation." 225 Or at 549. (Emphasis in original.)

The court then reiterated its first point:

"What we have said here does not mean that a manufacturer, vendor, or a similar supplier, including a lessor of equipment[,] is within [ELA]. The defendant must participate in the activity out of which the injury arose." 225 Or at 550.

As we indicated in *Dingell v. Downing-Gilbert, Inc.,* 81 Or App 545, 550, 726 P2d 937 (1986), *rev den* 302 Or 614 (1987), *Thomas v. Foglio, supra,* draws a less than bright line between manufacturers and suppliers who are subject to ELA liability and those who are not. Some language in the opinion clearly suggests that the mere introduction of unsafe equipment to the work site is not enough to permit ELA to be invoked against the manufacturer or supplier; other language suggests that bringing equipment to the site, *per se,* vests the supplier with ELA responsibility for its safety.

The quoted language from *Thomas v. Foglio, supra,* does not expressly resolve whether the applicability of ELA depends—at a minimum—on the provider having *continuing* control over the equipment after introducing it to the workplace. However, *Thomas* does suggest that the answer is yes, by saying that the defendant's ELA responsibility arose from the employes' "use of equipment over which [the defendant] has control and which, if not maintained with proper safeguard, necessarily exposes the employees of the other employer to an unreasonable risk." *See also Sacher v. Bohemia, Inc.,* 302 Or 477, 486, 731 P2d 434 (1987).

**1.** It would make little sense for ELA to be applicable to a manufacturer or provider who does not retain any control over the equipment or its use. Although the word "employer" hardly carries its traditional and usual connotation in the ELA context, the overriding purpose of the statute is to require that actual employers assure job safety. *See Wilson v. P.G.E. Company,* 252 Or 385, 448 P2d 562 (1968). Although ELA also applies to those whom the courts have denominated "indirect employers," it has no logical application and has not been judicially applied to persons who have no nexus with either the employes' work activity or their work-related use of goods or equipment. The law of negligence and strict products liability, rather than ELA, provides the appropriate recourse against manufacturers and suppliers who furnish unsafe equipment but retain no control over or connection with it or its use. *See Parks v. Edward Hines Lbr. Co. et al,* 231 Or 334,

339, 372 P2d 978 (1962); *Dingell v. Downing-Gilbert, Inc., supra,* 81 Or App at 551-52.

Plaintiff argues that, even given a requirement of ongoing control, there was evidence here that defendant retained enough control over the scaffold to be subject to ELA. Plaintiff points to testimony that defendant would have been responsible for modifications, maintenance or repairs of the scaffold, if any had been necessary during the course of the insulation work. That evidence has no tendency to show that defendant in fact had control. Defendant was never at the job site during the course of the insulation work and was not expected or required to be there. Any duty that it might have had to perform maintenance or repairs could have only arisen at plaintiff's employer's request and could not amount to the kind of ongoing control of or responsibility for the equipment necessary to give rise to ELA liability. The trial court erred by denying defendant's motion for a directed verdict on the ELA claim.

**2.** Four of defendant's assignments of error pertain to the negligence claim.[3] The scaffold had a built-in access frame, which could be used for climbing, instead of a separate ladder. Plaintiff alleged, *inter alia,* that defendant negligently constructed the frame with rungs separated by unequal distances and that defendant thereby violated applicable federal and state safety regulations. At trial, plaintiff argued that the regulatory requirement that ladders have a uniform 12-inch distance between rungs applies to scaffold access frames as well as ladders. *See* OAR 437-88-110(2); 29 CFR 1910.27(b)(ii). After the jury had heard that theory, the trial court rejected it as a matter of law. However, the court concluded that OAR 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 and 29 CFR § 1926.251(a)(13) are applicable and that they required that the scaffold have an "access ladder or equivalent safe access."

---

[3] In another assignment, defendant contends that the court erred by submitting a special verdict form to the jury that called upon it to make separate comparative fault determinations with respect to the two claims. We do not understand that assignment to relate to the negligence claim. If it is so intended, however, it cannot have caused prejudice, because the jury found the comparative fault under the negligence claim to be greater than the comparative fault under the ELA claim. Defendant does not take issue with the comparative fault instructions on either claim; it challenges only the verdict form that allowed the jury to make two findings on what defendant regards as one question.

Defendant does not disagree. It argues, however, that the court erred by reading a dictionary definition of "ladder" to the jury after instructing it on the "equivalent safe access" regulations and noting that they contain no definition. The point of defendant's argument is that the reading of the definition could have reinforced the erroneous link between the scaffold and the ladder regulations that plaintiff's arguments created in the jurors' minds. Defendant disregards the fact that what the "equivalent safe access" standard requires is a finding of equivalency with a ladder. The meaning of "ladder" is as material to the application of the "equivalent safe access" requirement as to the application of the ladder regulations themselves. The reading of the definition was not erroneous for any reason that defendant advances.

3. Defendant next assigns error to the court's refusal to give this requested instruction:

> "You are instructed that the scaffold erected by defendant was not required by law to have a uniform twelve inch distance between the rungs."

Plaintiff responds that the instruction would have been an improper comment on the evidence, because the proof permitted a finding that the frame could not be equivalently safe unless its rungs comported with those of a complying ladder. We agree that the requested instruction was properly refused. Although it is not a comment on the evidence, it could have confused the jury by indicating that defendant was not required "by law" to do the very thing which the jury was to decide whether defendant was negligent for not doing. Moreover, defendant was not entitled to an instruction that it was not negligent *per se,* when there was no issue of negligence *per se.*

4. Defendant's next assignment is that the court erred by excluding parts of plaintiff's supervisor's accident report that defendant sought to have admitted. We agree with plaintiff that the foundation for the evidence was inadequate, because the source of the information and the knowledge of the persons from whom it might have come were not sufficiently established. OEC 803(6).

5. Defendant's last assignment is concerned with statements in plaintiff's arguments to the jury that defendant's

third party complaint contained admissions of negligence (and of ELA liability). *See* n 1, *supra.* Although not stated, defendant's apparent point is that the argument invited the jury to draw an impermissible inference. After plaintiff's opening statement, defendant moved to exclude the third party pleading from evidence[4] and to have a curative instruction read to the jury. The court responded:

> "I think I have to hear all of the evidence before I can make such a ruling."

Defendant later objected to plaintiff's attorney's repetition of the judicial admission theme in his closing argument. The objection was overruled.

Assuming both that those rulings were erroneous and that they *could* provide an occasion for appellate relief,[5] we conclude that any error was harmless. The direct evidence of negligence was abundant and convincing, and we regard it as most unlikely that the jury resorted to the third party complaint or to the purported judicial admission in making its findings on plaintiff's negligence claim. Moreover, the jury saw and heard defendant's evidence and arguments. It was fully aware that defendant did not concede liability, and that fact could not have been obscured by plaintiff's makeweight argument.[6]

The trial court committed no reversible error in connection with the negligence claim. The jury's findings on that claim, independently of the ELA claim, support a judgment for plaintiff. Because plaintiff's comparative fault under the negligence claim was greater than the percentage reflected in the judgment, which was based on the ELA claim verdict, we remand for the trial court to recompute damages and to enter a new judgment.

---

[4] The third party claim and plaintiff's claims were tried to the same jury.

[5] As far as its assignment and its supporting argument disclose, defendant did not move for a mistrial or object to the admission of the third party complaint when and if it was offered. Defendant's counsel made an abstract request for a curative instruction in her colloquy with the court after the opening argument. However, if defendant submitted a written requested instruction, it is not reproduced or mentioned in its brief. Of the rulings set out in defendant's assignment or mentioned in its argument, only the overruling of the objection to the closing argument is even reviewable.

[6] *If* the jury gave *any* consideration to the third party complaint, it probably determined that the pleading did not contain any admissions.

Reversed and remanded with instructions to dismiss Employers' Liability Act claim and to enter judgment for plaintiff in accordance with jury's verdict on negligence claim.