Argued and submitted January 25, reversed and remanded in part; otherwise affirmed April 26, both petitions for review denied October 17, 1995 (322 Or 193)

Melissa A. QUACKENBUSH,
individually and as
Personal Representative of the
Estate of Gary D. Quackenbush, Deceased;
and Aaron D. Quackenbush,
by and through his Guardian Ad Litem,
Melissa A. Quackenbush,
*Appellants,*

*v.*

PORTLAND GENERAL ELECTRIC COMPANY,
an Oregon corporation;
and Asplundh Tree Expert Co.,
a Pennsylvania corporation,
*Respondents.*

(9302-01248; CA A83375)

894 P2d 535

Charles W. Carnese argued the cause for appellants. With him on the briefs was Dan R. Hyatt.

Michael A. Lehner argued the cause for respondent Portland General Electric Company. With him on the brief was Lehner, Mitchell, Rodrigues & Sears.

Edward S. McGlone, III, argued the cause and filed the brief for respondent Asplundh Tree Expert Co.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Plaintiffs[1] appeal from a summary judgment for defendants on their claims against Portland General Electric Company (PGE) and Asplundh Tree Expert Co. (Asplundh). We reverse in part.

A court shall grant summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. On review of a summary judgment, we examine the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Mittleman Properties v. Bank of California*, 131 Or App 666, 668, 886 P2d 1061 (1994).

When the evidence is viewed in the light most favorable to plaintiffs, the summary judgment record indicates the following: In October 1991, Pruett, Inc., (Pruett) was retained by the owner of a residence to prune various trees in the back yard of the residence. In November 1991, Pruett sent a crew to the job site to prune the trees. The crew noticed that there was a power line that ran through an oak tree in the back yard. The crew decided not to prune the oak tree because of the electrical line.

Thereafter, Steve Hillinger, an employee of Pruett, contacted PGE about the electrical line. In response to the contact, Dave Johnson, a forester for PGE, hired Asplundh to perform line-trimming on the oak tree. After Asplundh trimmed around the line, the line was three to four feet from the tree trunk. Johnson called Hillinger and told him that PGE had finished its task. Later in November, Pruett sent Gary Quackenbush (the decedent) and Jim Field to the residence to complete the pruning of the oak tree. While the decedent was in the tree, he came into contact with the line and was electrocuted, resulting in his death. As a result, plaintiffs filed this action for wrongful death. They allege that PGE and Asplundh are liable under the Employers Liability Act (ELA),[2] for common law negligence and negligence *per se*.

---

[1] Plaintiff Melissa Quackenbush is the personal representative of the estate of Gary Quackenbush and the guardian ad litem of Aaron D. Quackenbush, the child of Gary Quackenbush.

[2] ORS 654.305 *et seq.*

First, plaintiffs argue that the trial court erred in granting defendants' motions for summary judgment on the ELA claim. ORS 654.305 provides:

> "Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

Plaintiffs assert that defendants were the decedent's "indirect employers" under the ELA, and as such, were responsible for providing safe working conditions. The test for determining whether or not a defendant is an indirect employer under the ELA is set forth in *Miller v. Georgia-Pacific Corp.*, 294 Or 750, 754, 662 P2d 718 (1983):

> "Before the ELA can be made the basis of a claim for relief by an injured worker suing a defendant other than an employer of the worker, however, the defendant must be in charge of or have responsibility for work involving risk or danger in either (a) a situation where defendant and plaintiff's employer are simultaneously engaged in carrying out work on a common enterprise, or (b) a situation in which the defendant retains a right to control or actually exercises control as to the manner or method in which the risk-producing activity is performed."

The Supreme Court in *Sacher v. Bohemia, Inc.*, 302 Or 477, 486-87, 731 P2d 434 (1987), described the elements of a "common enterprise":

> "Thus, the 'common enterprise' test requires, first, that two employers (the plaintiff's actual employer and a third-party defendant employer) participate in a project of which the defendant employer's operations are an 'integral' or 'component' part; * * * second, the work must involve a risk or danger to the 'employees or the public,' ORS 654.305; third, the plaintiff must be an 'employee' of the defendant employer * * * and fourth, the defendant employer must have charge of or responsibility for the activity or instrumentality that causes the plaintiff's injury."

In *Wilson v. P.G.E. Company*, 252 Or 385, 391-92, 448 P2d 562 (1969), the Supreme Court said:

"Though defendant had employees on the project who were engaged with plaintiff in the furtherance of a common enterprise, and defendant could thus be said to have had a measure of control over the enterprise, this control created no risk of danger which resulted in plaintiff's injury. We do not construe the ELA to impose a duty upon each employer, engaged in a common enterprise with another, to make safe the equipment and method of work of the other, even though both have a measure of control over the activity in which they are jointly engaged. The injury must result by virtue of the commingling of the activities of the two employers and not be solely attributable to the activities or failures of the injured workman's employer."

*See also Fortney v. Crawford Door Sales Corp.*, 97 Or App 276, 775 P2d 910 (1989) (no liability under ELA when general contractor's employee brought action against supplier of overhead rolling steel doors).

▮▮▮ Plaintiffs argue that defendants' participation was an integral or component part of the project within the meaning of the ELA. We do not agree. The project in which Pruett was involved was the ornamental trimming of the entire tree. For liability to be imposed, the participation in the project "must be more than a common interest in an economic benefit" that accrues from the accomplishment of the project. *Sacher*, 302 Or at 486. PGE and Asplundh performed the limited activity of pruning around the electrical line. They finished their work before Pruett started its work, and there were no employees of defendants present when decedent was working on the tree.[3] At that time, defendants had no charge over or responsibility for Pruett's work. Although an employer can be "in charge" of an activity that forms only a component part of the common enterprise, that component part must be part of the commingling of the activities of the two employers out of which the injury arises. *Wilson*, 252 Or at 391-92. Decedent was not injured while defendants were

---

[3] *See Dingell v. Downing-Gilbert, Inc.*, 81 Or App 545, 726 P2d 937 (1986), *rev den* 302 Or 614 (1987) (no ELA liability when the plaintiff was injured by sheetrock hours after delivery by the defendant). *See also Settle v. PGE*, 81 Or App 474, 726 P2d 389, *rev den* 302 Or 460 (1986) (no liability under ELA when the plaintiff climbed the defendant's power pole and no representative of defendant was present).

involved in their activity. His death occurred after defendants' activity had ended. Consequently, the facts on which plaintiffs rely do not support a common enterprise theory.

■ ■ The second test under which plaintiffs claim PGE and Asplundh are indirect employers is the "right to control" test. In applying this test, we inquire whether defendants "retained a right to control or actually exercised control as to the manner or method in which the risk-producing activity was performed." *Miller*, 294 Or at 754. Although defendants were responsible for the pruning around the power line, there is no evidence that they controlled or retained the right to control Pruett's work in pruning the tree. To be liable, PGE and Asplundh must have exercised or retained a right to control the *manner or method in which the risk-producing activity was performed. See Steiner v. Beaver State Scaffolding Equipment Co.*, 97 Or App 453, 777 P2d 965 (1989) (no liability under ELA for supplier of scaffolding to construction site). The facts are uncontroverted that they did not have that right. The trial court did not err in granting summary judgment on plaintiffs' ELA claim.

In their second assignment of error, plaintiffs contend that the trial court erred in granting summary judgment on the claim that alleges that PGE and Asplundh were negligent under the common law. Specifically, plaintiffs maintain that PGE was negligent in failing to deenergize the electrical transmission line, in failing to install protective equipment over the electrical transmission line, in failing to have a qualified supervisor and an additional qualified employee on site during the trimming of the tree, in failing to assure that the tree had been adequately pruned around the electrical transmission line so that it could be pruned safely, and in advising Pruett that the tree could be pruned safely by its personnel. Plaintiffs make similar allegations against Asplundh.

■ ■ Our first inquiry in determining whether summary judgment was appropriate on plaintiffs' claim is whether there was a special duty created by status, relationship or statute owed by defendants to decedent. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987). Plaintiffs argue that such a relationship existed because PGE and

Asplundh were the "indirect employers" of decedent. However, for the reasons expressed previously, defendants were not the indirect employers of decedent. Plaintiffs also argue that, pursuant to ORS 757.805(1), defendants were "business entities responsible for performing activity and work in proximity to a high voltage overhead line; [thus,] they had the responsibility to guard against accidents involving the high voltage line as required by the OR-OSHA regulations."[4]

ORS 757.805(1) provides:

"Any person or business entity responsible for performing any function, activity, work or operation in proximity to a high voltage overhead line shall guard effectively against accidents involving such high voltage overhead line, as required by rules adopted pursuant to ORS chapter 654."

On its face, there is nothing in ORS 757.805(1) that suggests that entities like PGE or Asplundh must protect the employees of other employers after PGE's or Asplundh's work has been completed. Similarly, OAR 437-02-306

---

[4] Plaintiffs cite OAR 437-02-306 as controlling. The rule requires:

"(1) General.

"(a) The employer shall ensure that a close inspection is made by the employee and by the foreman or supervisor in charge before climbing, entering or working around any tree, to determine whether an electrical power conductor passes through the tree, or passes within reaching distance of an employee working in the tree. If any of these conditions exist either directly or indirectly, an electrical hazard shall be considered to exist unless the system operator/owner has caused the hazard to be removed by deenergizing the lines, or installing protective equipment.

"(b) Employees engaged in pruning, trimming, removing, or clearing trees from lines shall be required to consider all overhead and underground electrical power conductors to be energized with potentially fatal voltages and shall be instructed never to touch (contact) energized lines either directly or indirectly.

"(c) Before any work is performed within 10 feet of any energized high voltage line or equipment, the system operator/owner shall be contacted to ascertain if there are any hazards associated with the lines which may not be readily apparent.

"* * * * *

"(d) Only qualified line clearance trimmers or trainees familiar with the special techniques and hazards involved in line clearance shall be employed for trimming trees around electrical lines.

"(2) Supervision. When working around energized high voltage lines, tree trimming shall be done under supervision of a qualified person.

"* * * * *

"(7) Overhanging Branches. Branches hanging on an energized conductor shall be removed using appropriately insulated equipment."

imposes requirements on those who are performing work around electrical hazards while they are on the site. It does not purport to impose any obligation to protect those who come on the worksite after the work has been completed. We conclude that there was no special duty between the parties created by any status or relationship or by any statute or administrative rule relied on by plaintiffs before the trial court.

■ Our next inquiry is whether there is an issue of material fact about whether defendants unreasonably created a foreseeable risk of harm of the kind that befell plaintiff's decedent. *Fazzolari*, 303 Or at 17. The parties do not question that PGE has the general responsibility to maintain the integrity of its own lines and to remove any portion of the tree that was touching or could touch the line.[5] Beyond that responsibility, the gravamen of plaintiffs' allegations is that PGE undertook additional responsibilities that arose from the conversations between Johnson and Hillinger. If PGE undertook to assist Pruett in making the tree safe for Pruett's employees, then the law of negligence requires it to perform that task with reasonable care consistent with the scope of its understanding with Pruett and in so doing, to avoid any foreseeable risk of harm to Pruett's employees. *See Arney v. Baird*, 62 Or App 643, 647, 661 P2d 1364, *rev den* 295 Or 446 (1983) (defendant negligently assisted at an accident scene). *Restatement (Second) of Torts* § 323 (1965).

Plaintiff asserts that "[a]fter Asplundh had finished its line clearing, Johnson told Hillinger that the tree was made safe for Pruett employees." Hillinger testified in his deposition:

"Q So in other words, you rely on [PGE] to assess the hazard and then advise you, correct?

---

[5] ORS 757.035 governs the adoption and enforcement of safety regulations related to public utilities. That statute requires the Public Utility Commission to adopt the National Electrical Safety Code (NESC), which it has done. *See* OAR 860-24-010. Section 218 of NESC provides:

"Trees that may interfere with ungrounded supply conductors should be trimmed or removed."

The Public Utility Commissioner has issued a policy further defining the tree trimming rule and providing that certain clearance must be maintained depending on the specific circumstances involved.

"A   Yes.

"Q   Okay. And as I understand it, the advice that they gave you back was that it had been taken care of, correct?

"A   That they had sent a crew out and done whatever pruning was necessary for us to do the work in the tree."

Robert Cushman, a Pruett employee, testified in his deposition:

"Q   Now, if your only option is to prune the tree to make it safe, in other words, you don't have the option of shutting off the power, was there, from your observation of the tree the day after Mr. Quackenbush died, was there anything more that could have been done as far as pruning it to make that tree safe for Mr. Quackenbush?

"* * * * *

"A   Yeah.

"Q   What more could have been done as far as pruning to make it safe for Mr. Quackenbush?

"A   Prune the tops right out, right below the wire.

"Q   In other words, cut it off at the crotch?

"A   Right.

"Q   Basically cut down the tree?

"A   Right."

That evidence creates an issue of material fact about whether PGE assumed the responsibility to make the tree safe for Pruett's employees and whether it acted reasonably in carrying out that responsibility. The trial court erred in granting summary judgment for defendant PGE on plaintiffs' second claim.[6]

In contrast to the evidence of the assumption of the responsibility by PGE to make the tree safe, the evidence does not demonstrate that defendant Asplundh assumed any responsibility for the safety of Pruett's employees. Moreover, there is no evidence from which a jury could infer that Asplundh acted negligently in carrying out its responsibility to prune around the electrical line or in any of the particulars

---

[6] We do not decide whether there is evidence to support every specification of negligence in the second claim inasmuch as defendants moved against the second claim in its entirety.

alleged by plaintiffs. The evidence is uncontroverted that Asplundh did what PGE told it to do in a reasonable manner. The trial court correctly granted summary judgment in favor of defendant Asplundh.

Plaintiffs' other assignments of error concern the negligence *per se* claims regarding purported statutory and rule violations. The allegations in these claims are based on the same statute and rule that we discussed above. We conclude, as we did above, that they do not impose a responsibility on PGE and Asplundh to protect the employees of Pruett.

Judgment for Portland General Electric Company on common law negligence claim reversed and remanded; otherwise affirmed.